# STATE OF CONNECTICUT *v.* JOHN J. MCCARTHY, JR.
## (12069)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued April 30—decision released August 6, 1985

*Bruce L. Levin,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, *Judith Rossi,* special assistant state's attorney, and *Raymond J. Doyle, Jr.,* assistant state's attorney, for the appellee (state).

DANNEHY, J. The defendant was convicted by a jury of six counts of burglary in the third degree, four counts of larceny in the second degree, one count of larceny in the third degree, and one count of larceny in the fourth degree. On appeal he claims that (1) the trial court erred in denying his motion to dismiss pursuant to General Statutes § 54-82c, (2) the trial court erred in allowing evidence of insurance payments to establish the value of the stolen property, (3) he was denied effective assistance of counsel, (4) the trial court erred in admitting the hearsay testimony of two police officers and the written statement of an accomplice, and (5) there was insufficient evidence to sustain the verdict. We disagree and find no error.

Between June 5, 1980, and June 19, 1980, eight homes in affluent sections of the town of Ridgefield were burglarized. Taken from those homes was an

assortment of silverware, jewelry, cash, and other items. In August, 1980, a police investigation led to the arrest of David Basque. Basque admitted to having driven the defendant to several homes in Ridgefield during the span of a few days in order to burglarize them with the intent to sell the items stolen to purchase drugs. On the basis of Basque's confession, the defendant was arrested.

Prior to the commencement of trial, the defendant moved to dismiss all of the charges against him, claiming that he had been denied his right to a speedy trial pursuant to § 54-82c of the General Statutes.[1] After a hearing, the trial court denied the motion. On appeal,

---

[1] "[General Statutes] Sec. 54-82c. (Formerly Sec. 54-139). PRISONER'S RIGHT TO SPEEDY TRIAL ON PENDING CHARGES. (a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, community correctional center administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner.

"(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, community correctional center administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official

the defendant claims that the trial court erred in denying his motion when the defendant did all that was required of him under § 54-82c.

The stipulated facts relating to this claim are as follows. On June 5, 1981, the defendant sent to the warden of the institution where he was incarcerated an undated "written notice of the place of his imprisonment and his request for final disposition . . . of the . . . information." General Statutes § 54-82c (a). On June 5, 1981, the warden forwarded the defendant's request together with the required certificate to the appropriate court, which acknowledged receipt of the request on June 11, 1981. General Statutes § 54-82c (b). The office of the state's attorney, however, did not receive the defendant's request for disposition until September 3, 1982. The trial began on December 1, 1982, eighty-nine days after the receipt of the defendant's request by the state's attorney but almost eighteen months after the defendant first submitted his request to the warden.

Under General Statutes § 54-82d, if a criminal case is not assigned for trial within the statutory period of 120 days fixed under § 54-82c, the case must be dismissed.[2] The defendant does not dispute that our holding in *State* v. *Springer,* 149 Conn. 244, 178 A.2d 525 (1962), is controlling. There, we held that "[u]nder [§ 54-82c], the act required to be done in order to start the running of the period of 120 days is the delivery

has knowledge and of his right to make a request for final disposition thereof.

"(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request."

[2] "[General Statutes] Sec. 54-82d. (Formerly Sec. 54-140). DISMISSAL OF CHARGES ON FAILURE TO GRANT PRISONER SPEEDY TRIAL. If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

of the prisoner's request, accompanied by his custodian's certificate, to the prosecuting official of the county and the appropriate court. Obviously, a prisoner confined in a penal or correctional institution could not be required to make personal delivery. The General Assembly has therefore provided that the prisoner initiate the request for a trial, has required further that his custodian supply information concerning the prisoner's confinement to the prosecuting official and the court, and has then prescribed the procedure to effect the actual delivery of both. It is the completed delivery of both the request and the supplemental information which starts the running of the period of 120 days within which the prisoner must be brought to trial. Subsection (b) makes this clear in that the prisoner's written notice and request is required only to be 'given or sent' to the custodial official, but the latter's transmittal must be 'by registered or certified mail, return receipt requested.' The return receipt furnishes ample means of fixing the date from which the 120 days is to be computed. No provision is made, however, for fixing the date on which the notice and request is 'given or sent' by the prisoner to his custodian." Id., 249–50.

Admittedly, the defendant was brought to trial within 120 days of the receipt of his request by the state's attorney. The defendant urges us, however, to create an implied exception to our interpretation of when the 120 day period begins to run where a defendant has done "all things required of him to secure his right to a speedy trial under § 54-82c" and where the only failure to comply with the statute has been on the part of the warden who, due to inadvertence or malfeasance, has failed to notify the appropriate officials of the defendant's request.

On the basis of this record, the defendant has failed to provide us with any evidence to indicate that the delay between June 5, 1981, and September 3, 1982,

was caused by the "inadvertence or malfeasance" of the warden in violation of the warden's statutory duty "promptly [to] forward" the defendant's request. General Statutes § 54-82c (b). At the hearing on his speedy trial motion, the defendant not only failed to call the warden to testify but he offered no evidence concerning the cause of the delay. In the absence of any evidence to the contrary, it is presumed that the warden properly performed his duty. *Parham* v. *Warden,* 172 Conn. 126, 134, 374 A.2d 137 (1976); *State* v. *Lenihan,* 151 Conn. 552, 555, 200 A.2d 476 (1964). We cannot conclude, as the defendant argues, that the only reasonable inference for the cause of the delay in this case was that the warden simply failed to forward the defendant's request to the state's attorney.

The defendant next claims that the trial court erred in overruling his hearsay objections to the state's use of evidence of insurance payments to establish the value of the property taken from two of the burglarized residences.

To prove the value of the items stolen, the state offered the testimony of the victim-owners. The first victim testified that her losses included several antique sterling silver serving pieces and some gold and silver jewelry. She stated that she initially estimated the value of these items at approximately $2000. The state then asked her whether she had been reimbursed by her insurance carrier for the loss. She replied in the affirmative. When asked how much she had received, the defendant objected on the ground of hearsay. The trial court overruled the objection and the defendant duly excepted. The victim then testified that she had received $4000 from her insurance company.

The next victim-owner called by the state testified that several pieces of jewelry, some camera equipment, and a silver candy dish were taken from her home. She

stated that, in her opinion, the value of the stolen items was approximately $2000. She further testified, over the defendant's renewed hearsay objection, that she had received a $1200 reimbursement from her insurance company.

The jury returned verdicts of guilty of larceny in the second degree with respect to the burglaries of these two residences. General Statutes (Rev. to 1981) § 53a-123 provides: "(a) A person is guilty of larceny in the second degree when . . . (2) the value of the property or service exceeds five hundred dollars . . . ." General Statutes (Rev. to 1981) § 53a-121 (a) provides in pertinent part: "[T]he value of property . . . shall be ascertained as follows: (1) . . . value means the market value of the property . . . at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime."

The law in this state is well settled as to the competency of the owner of property to testify as to its value. "Our cases have ruled that the competence of the witness to testify to the value of property may be established by demonstrating that the witness owns the property in question. . . . The rule establishing an owner's competence to testify reflects both the difficulty of producing other witnesses having any knowledge upon which to base an opinion especially where the stolen items are never recovered . . . and the common experience that an owner is familiar with her property and knows what it is worth. . . . This rule is applicable in criminal as well as civil cases." (Citations omitted.) *State* v. *Baker,* 182 Conn. 52, 60–61, 437 A.2d 843 (1980); *State* v. *Gabriel,* 192 Conn. 405, 424, 473 A.2d 300 (1984). We do not understand by what reason the defendant can claim prejudicial error with respect to the admission of the evidence of insurance

payments where each owner first testified as to her opinion of the value of the stolen property.

This court recently approved without discussion the admission of evidence of insurance proceeds to establish the value of stolen property. *State* v. *Taylor,* 196 Conn. 225, 229, 492 A.2d 155 (1985). While payment by an insurer might be considered an implied hearsay assertion of its belief as to market value, both the Federal Rules of Evidence and the Uniform Rules of Evidence do not regard nonverbal conduct as falling within the definition of hearsay unless it is intended as an assertion. Fed. R. Evid., rule 801 (a); Unif. R. Evid. (1974 Rev.), rule 62 (1). Evidence of nonassertive conduct by persons not in privity with the parties is not violative of modern conceptions of the hearsay rule and, in the context of this case, had significant probative value and inherent guarantees of trustworthiness without attendant prejudice to the defendant. See *State* v. *Sharpe,* 195 Conn. 651, 664–66, 491 A.2d 345 (1985).

The defendant further claims that his right to effective assistance of counsel was violated because the performance of his trial counsel was neither " ' "reasonably competent [n]or within the range of competence displayed by lawyers with ordinary training and skill in criminal law." ' " *Siemon* v. *Stoughton,* 184 Conn. 547, 554, 440 A.2d 210 (1981). This claim is specifically based on his trial counsel's conduct with respect to the evidentiary issues raised by the defendant in his fourth claim of error.

The state's principal witness against the defendant was David Basque. On direct examination, Basque testified that on August 2, 1980, he had identified for the Ridgefield police several houses which he and the defendant had burglarized in June of that year. Two police officers had taken him for a ride through certain sections of Ridgefield. When he recognized a house

that he and the defendant had burglarized, Basque pointed out that house to the police. At trial, he could not remember details about the houses nor could he recall from memory the names of the owners which the police disclosed to him after he had pointed out a house that had been burglarized. To refresh his recollection, Basque had to refer frequently during his direct examination to the written statement he had given to the police on August 2, 1980.

On cross-examination, Basque completely repudiated his direct testimony. He testified that on August 2, 1980, he was experiencing drug withdrawal and that, in desperation, he was willing to "do anything" to get drugs. He stated that "in exchange for" his confession, the police promised him that he would not go to jail and that he would receive some methadone. With respect to his written statement, he claimed that it had not been written by him, that he had never read it, that he had not known what he was signing, and that he would have signed anything given his desperate state of mind. He further testified that he could not be certain that he had really recognized the houses which he had pointed out to the police and that he might even be confusing the burglaries in this case with other burglaries that he had committed alone. He had identified those homes, he continued, "[b]ecause I had to cooperate with the police at that time."

On redirect examination, the state attempted to rehabilitate its witness, but Basque's testimony was equivocal and he continued to maintain that he was uncertain about the houses he had identified on August 2, 1980.

The state then introduced the testimony of the two police officers to whom Basque had pointed out the houses and given his written statement. Their testimony essentially described Basque's conduct, his physical and mental state on the day in question, the

circumstances surrounding the confession and the procedure used for determining the identification of the burglarized residences. It was also brought out that the police had provided Basque with his daily dose of methadone before he identified the houses and signed his statement. The defendant's objections to portions of this testimony as hearsay were overruled. No exceptions were taken.

The defendant, during the presentation of his case, called Basque as a witness. When asked why Basque's testimony was "different today from what you told the police on August 2nd," Basque replied, "I'm under oath. I have to tell the truth, sir." During cross-examination by the state, the witness maintained that he signed the statement only because he was promised by the police that he would not go to jail and that he would get his methadone, if he cooperated. He also denied receiving the methadone until he had agreed to sign a statement. At this time, the state, without objection, introduced into evidence the signed statement of Basque.

The defendant contends that the introduction into evidence of the testimony of the two police officers and the written statement of Basque constituted hearsay. Although these claims were not properly preserved at trial, because they implicate the defendant's sixth amendment right to effective assistance of counsel we review them under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

To succeed in his claim of ineffective assistance of counsel, the defendant must show that his attorney's performance was not "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law"; *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208

(1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975); and further, that this " 'lack of competency contributed to the conviction.' " *State* v. *Clark,* supra; see also *State* v. *Gregory,* 191 Conn. 142, 143–44, 463 A.2d 609 (1983); *State* v. *Scielzo,* 190 Conn. 191, 206, 460 A.2d 951 (1983); *State* v. *Chairamonte,* 189 Conn. 61, 63, 454 A.2d 272 (1983). "If the evidence upon which the [defendant] bases his claim of ineffective assistance was properly admissible, he cannot sustain even the first part of this dual burden since the failure to object to admissible evidence cannot be considered conduct falling below the level of reasonably competent representation." *Williams* v. *Manson,* 195 Conn. 561, 564, 489 A.2d 377 (1985).

The testimony of one witness of a party may be contradicted by the testimony of any other witness offered by that party. *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 307, 114 A.2d 205 (1955). Such contradiction, however, must take the form of factual evidence and no witness can be impeached by contradicting his testimony as to a collateral matter. *State* v. *Wilson,* 158 Conn. 321, 324, 260 A.2d 571 (1969). A contradiction is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness. Id.

Obviously, the accuracy and voluntariness of the confession made by Basque were material issues in this case. The testimony of the police officers was introduced to contradict the implications raised by Basque's testimony during his cross-examination by the defendant. The officers' testimony was offered to show that the identification procedure used was neutral and unintimidating, that they made no threats or promises with regard to incarceration or sentencing, and that Basque was supplied with his daily dosage of methadone prior to the time he identified the houses and signed the written statement. These factual assertions were elicited

to contradict the defendant's version of the circumstances surrounding his confession. Any reference by the police officers to the incriminating statements made by Basque were merely reiterative of the testimony given by Basque during his direct examination by the state. The testimony of the officers, therefore, was properly admitted.

As a general rule, a party cannot impeach the testimony of its own witness by a prior inconsistent statement. *Delfino* v. *Warners Motor Express,* supra, 307. "An inconsistent statement, although offered by the party calling the witness who is claimed to have made it, may be admitted where hostility, surprise or deceit is disclosed." *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* 151 Conn. 582, 588, 200 A.2d 721 (1964). " '[I]f the witness fails to testify in substantial accord with his prior statement, the court has discretion to permit the admission of the inconsistent statement, even though surprise, in the full sense of the word, is lacking.' " (Citations omitted.) *State* v. *Roberson,* 173 Conn. 97, 100, 376 A.2d 1089 (1977).

In this case, it is fair to assume that, had the defendant objected to the admission of the statement, the trial court would have admitted it as a prior inconsistent statement. At an earlier stage of the trial, the trial court remarked, during an evidentiary ruling, that "I think the question is appropriate until there's a determination made as to whether or not it's [Basque's] recollection or whether or not he's hostile." Similarly, in its charge to the jury, the trial court properly instructed the jury that Basque's statement was to be considered "not to prove the truth of the facts contained" therein but for the purpose of impeachment only. A ruling admitting the statement, therefore, would have been discretionary and could properly have been made under the circumstances. Because we find that the evidence upon which the defendant bases his claim of ineffec-

tive assistance was properly admitted, we cannot hold, on the basis of this record, that his trial counsel's performance fell below the level of "reasonably competent representation." *Williams* v. *Manson,* supra, 564.

Finally, the defendant contends that the evidence adduced at trial was insufficient to sustain the verdict. When the sufficiency of the evidence supporting a verdict is challenged, we must determine whether the trier of fact " 'could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . .' " *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983). In so doing, we construe the evidence in a manner most favorable to sustaining the verdict. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984).

From the evidence presented, the jury could reasonably have found the following facts. In June of 1980, Basque drove the defendant to Ridgefield on several occasions for the purpose of committing burglaries in order to obtain money for drugs. After his arrest on August 1, 1980, in Bridgeport on unrelated charges, Basque admitted to having committed several burglaries in Ridgefield. He offered the police information definitively linking himself and the defendant to at least one known burglary in Ridgefield. Because he had informed the police that he was being treated in a methadone maintenance program and required a daily dose of methadone, the police, on the morning of August 2, 1980, obtained the drug for Basque. After taking the methadone, Basque was driven by the police around Ridgefield past "hundreds" of homes, out of which he identified eight as those which he and the defendant had burglarized. Although he did not know the names of the owners of the eight homes, Basque was able to give details such as points of entry and

items stolen from each house to corroborate his identifications. The police told Basque the owners' names to correlate with his identifications.

During the drive, passing by hundreds of houses, Basque at times spontaneously and immediately recognized a house; at other times he asked the police to drive past a certain house again. Throughout the identification procedure, Basque was somewhat anxious but not overwrought, and he spoke with the police in normal, conversational tones. When the identification procedure was completed, the police wrote down in narrative form the information gleaned from Basque. After he read the statement, including the provision regarding the penalty for perjury, Basque signed the written statement.

In reviewing the allegation of insufficient evidence, this court will not reweigh the evidence nor resolve questions of the credibility of witnesses, but will look to that evidence and the reasonable inferences drawn therefrom which support the findings of the jury. *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). The record is replete with evidence from which the jury could have reasonably concluded that the crimes of burglary and larceny as charged in the information were committed. The defendant pleaded not guilty. He denied any connection with the crimes charged. The evidence linking him with the crimes was the testimony of his alleged accomplice, David Basque. The credibility of Basque was a matter exclusively for the jury. If the jury believed Basque's initial testimony and disbelieved his later attempt to repudiate his confession, the jury could have reasonably concluded that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. Such questions are left to the jury. *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444

U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). That being so, our review is at an end.

There is no error.

In this opinion the other judges concurred.