STATE OF CONNECTICUT *v.* CARL HENDRICKSON
(5558)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued October 14—decision released December 1, 1987

*Lori R. Wilson,* special public defender, for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Roland Fasano,* assistant state's attorneys, for the appellee (state).

STOUGHTON, J. The defendant was convicted, after a trial to a jury, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), robbery in the first degree in violation of General Statutes §53a-134 (a) (4), and carrying a pistol without a permit in violation of General Statutes § 29-35. The defendant claims that the trial court erred (1) in denying his motion to suppress, (2) in overruling his objection to the admission into evidence of the guilty plea of an alleged accomplice, (3) in denying his motion for a new trial,[1] (4) in overruling his objection to the admission into evidence of guns and a wallet, and (5) in denying his motion for judgment of acquittal.

The jury could reasonably have found the following facts. On January 29, 1986, the defendant drove from Brooklyn, New York, to New Haven with Eric Clarke, Tony Foster and a third man known as Country to commit a robbery. At about 1 a.m., they went to an apartment on Howard Avenue where they expected to find money and drugs. The defendant and Country were armed with automatic weapons. Foster remained in the car while the defendant, Clarke and Country entered the back entrance of the apartment building and went to the third floor. When they reached the third floor, they saw a man enter the apartment to buy something. As the man left, Country held his gun to the man's head and told him to go back to the apartment door and

---

[1] This claim was raised in the defendant's preliminary statement of issues. Since this issue was neither briefed nor argued, however, it is deemed abandoned. *State* v. *Mack,* 197 Conn. 629, 632, 500 A.2d 1303 (1985).

knock. When the knock was answered, Country and the defendant, who had his gun out, forced the man inside. Clarke stood just inside the doorway while the defendant and Country went inside and asked where the money was. Country hit one of the men in the apartment with his gun and the defendant took a wallet from Keith Gayle. The defendant fled from the apartment, followed by Clarke and Country, who took a bag containing some marihuana, a shirt, two hats and a radio.

Officer Carlos Stewart arrived at the building in response to a report of the burglary. He saw two or three people come down the rear stairway into the back yard and start running down the street. He drove after them and was joined by Officer Paul Healey. In a schoolyard, the defendant flattened himself on the ground, while Country and Clarke continued to run down an adjoining street named Portsea Street. When Stewart approached, the defendant jumped up and started to run. The canine unit arrived on the scene and began to chase the defendant, while Stewart continued after the other two. Officer John Tompkins of the canine unit saw the defendant point what appeared to be a gun at the dog, but no shots were fired. After the dog eventually stopped him, the defendant was ordered by Tompkins, to drop the gun. Instead, the defendant threw it into a fenced-in area. The defendant was handcuffed and taken by Healey in his police car to a police wagon, in which the defendant was taken to the police station. Tompkins later recovered the gun which was found loaded and cocked. Clarke was apprehended by another policeman. Stewart saw the other two men running down Portsea Street carrying a bag. He saw them climb a fence to the rear of the schoolyard, and he lost sight of them. Country was not caught, but the bag he took from the apartment was recovered. A resident of Portsea Street later found a gun there and turned it over to the police. Healey left

his police car at the police station at about 4:30 a.m. On that same day at about 11:30 a.m., Officer Shelby Jones was putting some equipment in the back seat of the car which had been used by Healey, and he found Keith Gayle's wallet beneath the seat.

I

The defendant filed a motion to suppress evidence of statements which he made to the police. The court held a hearing prior to trial, after which it denied the motion to suppress. The defendant claims that the ruling was erroneous because (1) the state failed to prove that he understood his *Miranda* rights, and (2) the state failed to prove that his course of conduct waived those rights.

Before any statement made by a suspect while he is in custody may be used against him in a criminal prosecution, it must be shown that he was informed that he had certain rights which are secured by the United States constitution. These rights are set out in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and are too well known to require repeating here. The suspect may, however, knowingly and intelligently waive these rights and agree to answer questions or make a statement. *Miranda* v. *Arizona,* supra.

At about 4 a.m. on January 29, 1986, while the defendant was in custody, he was questioned by Detective Leonard Pastore of the New Haven police department. Pastore was the only witness who testified at the suppression hearing. Pastore said that he identified himself and that he then read the *Miranda* rights to the defendant from a standard waiver form used by the police department. Pastore asked the defendant if he understood, and the defendant indicated that he did understand and that he was willing to talk to Pastore. He did not ask for an attorney. The defendant was

coherent, did not appear to be under the influence of drugs or alcohol and was able to articulate so that Pastore understood what he was saying. Pastore had no question in his mind that the defendant understood his rights. Pastore then proceeded to interview the defendant. The defendant, who had given a name other than his own to the police, first said that he was from Stratford and had gone to 588 Howard Avenue to buy drugs. He said that when he got there, he saw some commotion and fled. He first denied being chased and caught by the canine unit, but admitted it after Pastore found a tear in the defendant's jacket. Pastore started to ask about the weapon which was found, and the defendant denied having possession of any weapon and terminated the interview. Pastore asked the defendant to initial and sign the form to indicate that he had been advised of his rights, but the defendant refused to do so. The defendant was willing to answer questions until that point. He was not willing to initial or to sign anything or to give a taped interview.

The defendant does not claim that he did not understand his rights, but that the state did not prove that he understood his rights. This may well be because no evidence was offered to the trial court that the defendant did not understand his rights. The only evidence on the subject was the testimony from Pastore that the defendant indicated that he understood, and that there was no question in Pastore's mind that the defendant understood. The state argues that this claim should not be reviewed because it was not raised before the trial court. *State* v. *Vasquez,* 9 Conn. App. 648, 653, 520 A.2d 1294 (1987). It is undoubtedly true, as asserted by the defendant, that to waive his rights knowingly and voluntarily the defendant must have understood them. *State* v. *Wilson,* 183 Conn. 280, 285, 439 A.2d 330 (1981). Whether he did so is a question of fact, but requires a scrupulous examination of the record in order

to ascertain whether such a finding is supported by substantial evidence. *State* v. *Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). The only evidence on this question was the testimony by Pastore. This testimony clearly supports a finding by substantial evidence that the defendant understood his rights. The record also shows that the defendant indicated to Pastore that he was willing to talk to him and, therefore, expressly waived his right to remain silent. The state has the burden of proving by a fair preponderance of the evidence that the defendant knowingly and voluntarily waived his rights. *State* v. *Pecoraro,* 198 Conn. 203, 208, 502 A.2d 396 (1985). Proof of waiver may be inferred from the defendant's course of conduct. *State* v. *Wilson,* supra. The defendant's willingness to speak, coupled with his termination of the conversation, revealed that he clearly understood his rights. It also permits an inference that when he responded to the initial questions he knowingly and voluntarily waived those rights. *State* v. *Pecoraro,* supra, 208–209. While his refusal to initial or to sign anything or to give a taped interview are relevant factors on the question of waiver, they may be outweighed by other factors. *State* v. *Shifflett,* 199 Conn. 718, 733, 508 A.2d 748 (1986). On these facts, they clearly were.

## II

During the trial of this case to the jury, the state called Eric Clarke as one of its witnesses. Clarke testified concerning the events of January 29, 1986, and the defendant's participation in those events. This was the only testimony concerning what had occurred at the Howard Street apartment. In the course of his direct testimony, Clarke said that he had pleaded guilty but that he did not know what his sentence was to be. On cross-examination, Clarke testified that he knew that he would be expected to testify and that his testi-

mony would be brought to the attention of the sentencing judge. He was asked if he expected to be rewarded for testifying and said that he did not understand. He was asked if he expected "to get a lesser sentence" and said that he did not know the law and did not know what time he would get. Defense counsel also brought out through cross-examination of Clarke that a burglary in the first degree charge, which carried a mandatory minimum sentence, had been changed to burglary in the third degree. Thereafter, the state was allowed, over objection, to introduce a transcript of a part of the proceedings in court at the time Clarke's guilty plea was taken. This transcript was ruled admissible because of the cross-examination, with respect to any hopes or expectations Clarke might have had for consideration at the time of his sentencing. The transcript contained statements by the assistant state's attorney and by Clarke's counsel. The assistant state's attorney stated that Clarke might be called as a witness, and that the only agreement was that his testimony would be a factor for the state to consider in recommending a sentence. The defendant cross-examined Clarke fully, and the claim he has briefed with respect to the admissibility of the transcript is that he was never given an opportunity to cross-examine the assistant state's attorney or Clarke's defense counsel.

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). The defendant attacks the credibility of Clarke and suggests that the change to a charge containing no mandatory minimum sentence suggests the possibility of an unstated agreement. He does not claim that he did not have the opportunity fully to cross-examine Clarke. He made no effort to call either the assistant state's attorney or Clarke's attorney, and he did not suggest to the trial court or

to this court that either would have said anything which was different from what each had said at the time the guilty plea was taken. The assistant state's attorney said that the only agreement was that Clarke's testimony would be a factor to consider in recommending sentence, and Clarke's attorney pointed out that there was no mandatory minimum sentence required. Even if there had been some unstated agreement, and there is nothing in the record even to suggest such a possibility, such an unstated agreement would first have to be stated to Clarke before it could influence him in any way. The defendant was not denied the opportunity to cross-examine any of the witnesses, and we find no error as to this claim.

## III

The defendant also claims error in admitting into evidence the two guns and the wallet. He contends that none of these items was sufficiently linked to the defendant and, thus, their relevance was not established. We disagree.

The trial court is vested with broad discretion in rulings on relevancy; *State* v. *Rogers,* 10 Conn. App. 258, 260, 522 A.2d 839, cert. denied, 203 Conn. 809, 525 A.2d 522 (1987); and every reasonable presumption must be given in favor of the court's rulings. *State* v. *Brown,* 9 Conn. App. 313, 317, 518 A.2d 670 (1986). These items constituted proof of elements of the crimes charged, and they corroborated testimony of Clarke. Whether they were sufficiently linked to the defendant goes to the weight to be accorded them as evidence and was for the jury to determine. There was no error as to this claim.

## IV

The defendant finally claims that the court erred in denying his motion for acquittal because the state failed

to prove an unlawful entry by the defendant, failed to prove a wrongful taking by the defendant, and failed to prove possession of a gun by the defendant. In reviewing allegations of insufficient evidence, we will not evaluate the evidence nor will we resolve questions of the credibility of witnesses. *State* v. *McCarthy*, 197 Conn. 166, 179, 496 A.2d 190 (1985). We review the evidence in the light most favorable to sustaining the jury's verdict. *State* v. *Dickson*, 10 Conn. App. 462, 464, 523 A.2d 935 (1987). The evidence was sufficient, if believed by the jury, to establish an unlawful entry by the defendant, a wrongful taking of Gayle's wallet by the defendant and the defendant's possession of a gun.

There is no error.

In this opinion the other judges concurred.