STATE OF CONNECTICUT *v.* RONALD ADAMS
(6041)

SPALLONE, DALY and NORCOTT, Js.

120

Argued January 20—decision released April 12, 1988

*Dennis F. O'Toole,* assistant public defender, for the appellant (defendant).

*Joseph C. Morelli,* special assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103, larceny in the fourth degree in violation of General Statutes § 53a-125, and tampering with a motor vehicle in violation of General Statutes § 53a-119b (c) (2).

The defendant claims that the evidence adduced at trial was insufficient to support the jury verdict convicting him of the crimes charged. The defendant further claims that the trial court erred (1) in refusing to allow him to present foundation testimony for a "missing witness" instruction to the jury, (2) in refusing to grant his motion for mistrial due to the prosecutor's reference to his prior criminal convictions as relating to guilt during the state's final argument, and (3) in reopening, sua sponte, his sentence and resentencing him on that very same day. We find no error.

From the evidence produced at trial, the jury could reasonably have found the following facts. On the eve-

ning of December 13, 1986, Ephram Torres and Kevin Williams observed the defendant sitting in a small white car which was parked in the rear parking lot of 85 Sumner Street in Hartford. Williams did not testify at trial, but Torres testified that he observed the defendant in the driver's seat with his left hand on the steering wheel and with a screwdriver in his right hand which was near or on the ignition. The dome light of the car was on at the time of Torres' observation. Believing that the defendant was calling to him, Torres approached the vehicle. Thereupon, the defendant exited the vehicle and struck Torres. A fight ensued between the two men. While Williams unsuccessfully tried to separate the combatants, a large crowd gathered prompting someone to call for the police.

Officer John Cunningham of the Hartford police department responded to the scene of the fight. During the course of his investigation that night, he observed that the identification number of the small white vehicle matched that of a vehicle reported stolen almost one month earlier by Lynn Olsen, another Hartford resident. Cunningham also noticed that the ignition had been "popped" or forcibly removed from the vehicle. The defendant was arrested and charged with the three crimes of which he was convicted.

The evidence presented at the defendant's trial included the testimony of Olsen to the effect that some time between late evening November 11 and early morning November 12, 1986, her white 1976 Ford Maverick was stolen from the parking lot of her apartment building on Asylum Street in Hartford. She testified that at the time of its disappearance, the car was locked, physically intact and in excellent condition. When she next viewed her vehicle on December 14, 1986, she observed that the locks to the trunk, driver's door and glove compartment and the ignition all had been "popped." In addition, the driver's door had been damaged, and the

new set of tires which she had recently installed prior to the theft were badly worn.

Olsen also testified that she transferred the title to the vehicle to her insurance carrier which paid her $816 based on the "Blue Book" value of the vehicle and $100 for the stolen contents of the vehicle.

During the state's closing argument, the state's attorney made the following remarks in reference to the defendant: "Well, he's indicated he's no stranger. He knows his way around the criminal scene. He indicated on the record there he has a felony record." The defendant promptly objected to the prosecutor's remarks, and the court gave an immediate cautionary instruction to the jury after which it denied the defendant's motion for a mistrial.

Thereafter, the defendant was convicted as charged. On the morning of the sentencing, April 22, 1987, the trial court sentenced the defendant as follows: for burglary in the third degree, three years; for larceny in the fourth degree, one year consecutive to the previous sentence; and, for tampering with a motor vehicle, one year consecutive to the two prior sentences for a total effective sentence of five years. In the afternoon of that same day, the court recalled the defendant, vacated the previous sentence and resentenced the defendant as follows: for burglary in the third degree, five years; for larceny in the fourth degree, one year concurrent; and for tampering with a motor vehicle, one year concurrent for the same total effective sentence of five years. This appeal followed the resentencing.

I

The defendant first makes a wholesale attack on the sufficiency of the evidence supporting the jury verdict. "In reviewing allegations of insufficient evidence,

we will not evaluate the evidence nor will we resolve questions of the credibility of the witnesses. *State* v. *McCarthy,* 197 Conn. 166, 179, 496 A.2d 190 (1985). We review the evidence in the light most favorable to sustaining the jury's verdict. *State* v. *Dickson,* 10 Conn. App. 462, 464, 523 A.2d 935 (1987)." *State* v. *Hendrickson,* 12 Conn. App. 662, 670, 533 A.2d 894 (1987).

With respect to the charge of tampering with a motor vehicle, the defendant claims that the state failed to provide sufficient evidence from which the jury could have found the defendant guilty under General Statutes § 53a-119b (c) (2).[1] The essence of the defendant's claim is that there was no evidence in the record to prove that the defendant had any intent to do damage to the car or, in fact, did any damage to the vehicle on December 13, 1986, the date charged in the information. We disagree.

The sole witness at the trial to the acts of the defendant on December 13, 1986, was Torres. Torres testified that on the night in question he saw the defendant "playing with the steering wheel of the car with an object that looked like a screwdriver." He also testified that he saw the defendant "playing with an object on the steering wheel" and "his [the defendant's] left hand was holding the steering wheel and his right hand was on the ignition switch." The jury also heard testimony from the investigating officer who testified that he "observed the ignition popped." The owner of the vehicle testified that her car, the 1976 white Ford Maverick, was locked at the time it was stolen on November 12, 1986, and when she next saw the car, all the locks were popped and other damage was evident as well.

---

[1] General Statutes § 53a-119b provides in relevant part: "(c) A person is guilty of interfering or tampering with a motor vehicle when: . . .

"The jury can draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Dumlao,* 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985)." *State* v. *Greene,* 11 Conn. App. 575, 579, 528 A.2d 855 (1987). "An individual's intention may be inferred from his or her conduct; *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and intent is usually established by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686; *State* v. *Nathan,* 138 Conn. 485, 488, 86 A.2d 322." *State* v. *Avila,* 166 Conn. 569, 579, 353 A.2d 776 (1974). The question of intent is purely a question of fact to be determined by the jury. See *State* v. *Miller,* 202 Conn. 463, 486, 522 A.2d 249 (1987); *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986); *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984). In this case, the evidence was sufficient, if believed by the jury, to establish that the defendant not only intended to "damage or remove a component part of a motor vehicle" within the meaning of General Statutes § 53a-119b (c) (2), but that he actually did so.

Furthermore, we find no merit in the defendant's claim that the crimes charged need be proven to have been committed on the precise date of the defendant's arrest. Such precision is not required "provided it is proved (1) that the crime was committed prior to the date of the complaint, (2) that the crime was committed within the period fixed by the statute of limitations, (3) that time is not an essential element of the crime charged, and (4) that the time is not otherwise a material factor in the defendant's case. *State* v. *Horton,* 132 Conn. 276, 277, 43 A.2d 744 (1945); see *State* v. *Ramos,* 176 Conn. 275, 276–77, 407 A.2d 952 (1978); *State* v.

---

(2) with intent and without right to do so, he damages any motor vehicle or damages or removes any of its parts or components."

*Bitting*, 162 Conn. 1, 8, 291 A.2d 240 (1971)." *State v. Bowman*, 3 Conn. App. 148, 155, 485 A.2d 1343 (1985). Our review of this record reveals that the state clearly proved the first two elements under *Bowman* and that time was neither an essential element of the crimes charged nor a material fact in the defendant's case.

With respect to the conviction for larceny in the fourth degree, the defendant claims that there was insufficient evidence produced at trial upon which the jury could determine the market value of the car at the time of the crime or the replacement value within a reasonable time after the crime. It is the defendant's contention that the state failed to introduce valuation evidence to conclusively establish the market value of the vehicle to be at least $500. We again disagree.

Under General Statutes § 53a-125 (a), "a person is guilty of larceny in the fourth degree when he commits larceny . . . and the value of the property . . . exceeds five hundred dollars."[2] Olsen testified that she received from her insurance carrier "Blue Book" value of $816 for the car and $100 for personal items stolen from within the vehicle. She further testified that she considered the amount received to be low due to the "excellent shape" of the car at the time of the theft. A victim's opinion as to the value of his stolen property may properly be placed before the jury. See *State v. Taylor*, 196 Conn. 225, 229, 492 A.2d 155 (1985). Our Supreme Court has recently commented in this regard: "The law in this state is well settled as to the competency of the owner of property to testify as to its value. 'Our cases have ruled that the competence of the witness to testify to the value of the property

---

[2] General Statutes § 53a-125 (a) provides: "(a) A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."

may be established by demonstrating that the witness owns the property in question. . . . This rule is applicable in civil as well as criminal cases.' (Citations omitted.) *State* v. *Baker,* 182 Conn. 52, 60–61, 437 A.2d 843 (1980); *State* v. *Gabriel,* 192 Conn. 405, 424, 473 A.2d 300 (1984)." *State* v. *McCarthy,* supra, 172. From the trial testimony of Olsen the jury could have reasonably concluded that the market value of her 1976 Ford Maverick exceeded $500 at the time of the crimes.

The defendant's final contention regarding the insufficiency of evidence involves the conviction for burglary in the third degree in violation of General Statutes § 53a-103.[3] The defendant's argument takes two forms: (1) that the conviction for burglary in the third degree was based on insufficient evidence of the defendant's intent to commit a crime inside a "building" as defined by General Statutes § 53a-100 (1); and (2) that to charge the defendant with the crime of burglary in the third degree, a felony, for the theft of a motor vehicle valued less than $1000, a misdemeanor under Public Acts 1986, No. 86-275, is inconsistent with the legislative intent of this recent legislation. We disagree.

It is now well settled that a motor vehicle is included within the definition of "building" under General Statutes § 53a-100 (1).[4] *State* v. *Baker,* 195 Conn. 598, 600–603, 489 A.2d 1041 (1985). The first prong of the defendant's argument must fail if we conclude that there was sufficient evidence in the record to support a conviction for a crime committed inside the vehicle.

---

[3] General Statutes § 53a-103 provides in relevant part: "(a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[4] General Statutes § 53a-100 (a) (1) provides: "(a) The following definitions are applicable to this part: (1) 'Building' in addition to its ordinary meaning, includes any watercraft, aircraft, trailer, sleeping car, railroad car, other structure or vehicle or any building with a valid certificate of occupancy."

Since we have concluded that the jury could reasonably have found that the defendant tampered with a motor vehicle within the meaning of General Statutes § 53a-119b (c) (2), we find the first part of this claim to be without merit. Indeed, under the burglary statute it is sufficient that the jury find only that the defendant *intended* to commit a crime within the vehicle. Torres' testimony that he saw the defendant physically seated within the Olsen vehicle with a screwdriver in his hand near the "popped" ignition clearly establishes a basis from which the jury could draw reasonable inferences and conclude that the defendant had entered or remained unlawfully inside that vehicle with the intent to commit a crime, in this case tampering with a motor vehicle.

The defendant's second claim is that "as a matter of law . . . entering a motor vehicle to illegally obtain possession of that motor vehicle is a larceny only and not concomitantly a burglary." We need not address this issue because, in committing the burglary in this case, the defendant did not necessarily intend to steal the automobile. There was evidence at trial from which the jury could reasonably have concluded that the defendant entered the automobile with the intent to remove the possessions within the vehicle. The jury could also have concluded that the defendant intended to damage the component parts within the vehicle without taking the vehicle itself. Accordingly, the jury could reasonably have convicted the defendant of both burglary and larceny without finding that the defendant intended to take the automobile when he first entered.

## II

The defendant next claims that the trial court erred in failing to allow the defendant to present foundation testimony for an instruction to the jury that they could draw an adverse inference due to the state's failure to

produce a material witness. The "missing witness" in question was Williams, who was with Torres on the night of December 13, 1986.

At trial, by way of an offer of proof, the defendant called as a witness Frank DeDominicis, an investigator with the office of the public defender in Hartford. The investigator testified that while he never saw or met Williams, he spoke by phone to a person who identified himself as Williams approximately two months before the trial. The investigator further testified that, although Torres had provided Williams' phone number, he never independently verified that Williams was the person with whom he spoke. The trial court refused to allow DeDominicis' testimony, and the court thereafter refused to give the "missing witness" or the so-called *Secondino* instruction to the jury.

The standards for determining whether a party is entitled to a *Secondino* instruction and the rule itself are clear. " 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928). 'There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce.' *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960); see *D'Amico* v. *Manson,* 193 Conn. 144, 153, 476 A.2d 543 (1984); *Doran* v. *Wolk,* 170 Conn. 226, 230, 365 A.2d 1190 (1976). 'To have the jury charged on the rule, the party claiming the benefit of it must show that he is entitled to it. *State* v. *Carrione,* 188 Conn. 681, 688, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983).' *State* v. *Amarillo,* [198 Conn. 285, 307, 503 A.2d 146 (1986)]." *State* v. *Hart,* 198 Conn. 424, 428, 503 A.2d

588 (1986). Thus, under one part of the rule, it is the defendant's burden to show that the missing witness is one whom the state would naturally produce. " ' "A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without anticipation that an inference may be invoked." ' *State* v. *Carrione*, supra, 688, citing *State* v. *Brown*, 169 Conn. 692, 705, 364 A.2d 186 (1975)." *State* v. *Alfonso*, 195 Conn. 624, 632, 490 A.2d 75 (1985).

From our careful review of this record, we conclude that the trial court did not err in refusing to give the *Secondino* instruction. The witnesses produced at trial were sufficient to establish each and every element of the crimes charged. Given the testimony produced at trial, the defendant failed to demonstrate why Williams was a witness whom the state would naturally produce. We conclude that the trial court's finding that Williams' testimony would have been "comparatively unimportant, cumulative or inferior to what has been offered" is supported by the record and accordingly the defendant was not entitled to a *Secondino* charge.

### III

The defendant also claims that the trial court erred in denying the defendant's motion for mistrial due to the prosecutor's improper reference to the defendant's criminal convictions during his final argument.

During the state's final argument, the following remarks were made by the state's attorney: "Well, ladies and gentlemen, you've seen the state's witnesses: Mr. Torres; the owner of the car, Ms. Olsen; listened to their testimony; seen the accused get on the stand. You know, he says, the ignition wasn't popped before it got there. He doesn't know anything about this. All these strange things. Well, he's indicated he's no stran-

ger. He knows his way around the criminal scene. He indicated on the record that he has a felony record." The defendant objected and the court immediately gave this cautionary instruction to the jury: "Counsel are reminded. I'll tell the jury. Introduction of evidence of a prior conviction is solely to test the credibility of the witness. It has no other purpose than to bring to the jury a factor which the jury may consider if it wishes, on the issue of credibility. You may continue." The prosecutor's next words to the jury are also relevant to our discussion here. He continued: "So you can weigh this—balance this testimony between the accused. Who's telling the truth here about what went on. Is it the officer, Mr. Torres and Ms. Olsen? Or is it the accused . . . ?" Later, during its instructions to the jury, the trial court again repeatedly cautioned the jury that evidence of the commission of another crime other than the one charged is admitted solely for the purpose of impeaching the defendant's credibility and not for proving the guilt of the accused.[5]

---

[5] The trial court's jury instructions set forth in pertinent part as follows:
"In this case evidence was introduced to show the defendant was convicted of a felony in one year and a robbery in another year. Evidence of the commission of another crime other than the one charged is not admissible to prove the guilt of the defendant in this particular case. I will read that sentence again because it is important. Evidence of the commission of another crime other than the one charged is not admissible to prove the guilt of the defendant in this particular case. The commission of other crimes by this defendant has been admitted into evidence for the sole purpose of affecting his credibility. And that's what I told you earlier. You must weigh the testimony and consider it along with all the other evidence in the case. You may take into consideration only the convictions of the defendant as bearing upon his credibility and you should determine that credibility upon the same considerations as those given to any other witness. I will restate the principle. Evidence of the commission of another crime other than the one charged is not admissible to prove the guilt of the defendant in this case. Now as you know, he's charged with three separate offenses. Those convictions cannot be used to prove anything of the elements of those charges. The purpose of those convictions is solely on the purpose of affecting his credibility. The evidence from which you are to decide what the facts are consists of the sworn testimony of witnesses, both on direct and cross-

We begin by noting that the trial court's "determination as to the fairness of the defendant's trial must be afforded great weight." *State* v. *Ubaldi,* 190 Conn. 559, 563, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). Therefore, "[w]here a motion for mistrial is made in response to a prosecutor's allegedly improper [comment], the burden is on the defendant to establish that, in the context of the proceedings as a whole, the [comment] was so prejudicial that it deprived him of a fair trial." *State* v. *Fleming,* 198 Conn. 255, 267, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). The defendant claims that no curative instruction could have cured the allegedly tainted language. We disagree.

The defendant took the witness stand at trial, and his credibility was clearly a significant issue. The defendant's prior felony convictions pertained to his veracity. The trial court's immediate cautionary remarks coupled with its curative instruction during the charge of law obviated any possible prejudice to the defendant. See *State* v. *Ubaldi,* supra, 562. The burden on the defendant is to show that the prosecutor's remarks were prejudicial in light of the entire proceeding. *State* v. *Cosgrove,* 186 Conn. 476, 488–89, 442 A.2d 1320 (1982). In this case, the defendant failed to meet this burden. We conclude that with respect to this third claim there is no error.

## IV

The defendant's final contention is that the trial court erred in opening his sentence, sua sponte, and resentencing him on the same day. The defendant was sen-

examination regardless of who called the witness; the exhibit which has been received into evidence; any facts to which all the lawyers have agreed. In reaching your verdict you should consider all of the testimony and exhibits received into evidence."

tenced during the morning session of court on April 22, 1987. After the lunch break, the court sua sponte recalled the defendant, vacated the previous sentence and resentenced the defendant. The sentence for the burglary in the third degree was increased from three to five years, and the one year sentences for the misdemeanors were imposed to run concurrently with the burglary sentence rather than consecutively; the total effective sentence of five years remained unchanged.

The trial court had reasoned that its earlier sentence was possibly illegal under the decision in *State* v. *Johnson,* 192 Conn. 471, 472 A.2d 1267 (1984), where our Supreme Court condemned the imposition of consecutive sentences for crimes which could be interpreted as constituting a single act. During that afternoon session the trial court said, "What I am talking about, Mr. Adams, you were convicted of burglary, larceny and tampering. It might be argued, or arguable that it constituted a single episode, and a more appropriate sentence instead of the sentence I imposed would be a concurrent sentence." The court later stated: "The effective sentence imposed is the same as this morning. That is five years. . . . That will remain the same. That is the sentence of the Court. I just wanted it to be reflective of the Court's intent. Thank you."

The defendant's sole claim on appeal is that once the first sentence was imposed, the trial court was without authority to change or modify that sentence unless it was somehow invalid.

"As a general rule, a criminal sentence 'cannot be modified by the trial court, even at the same term, if the sentence was valid and execution of it has commenced.' *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962) . . . . If there is no indication

to the contrary in the record, it may be presumed that execution of the original sentence commenced promptly after it was imposed." (Citations omitted.) *State* v. *Elliot,* 8 Conn. App. 566, 574–75, 513 A.2d 1285, cert. denied, 201 Conn. 813, 517 A.2d 630 (1986). In this case, without passing on the validity of the earlier sentence, we find that the record supports the conclusion that the execution of the original morning sentence had not commenced. The afternoon resentencing took place some three hours after the original sentence was imposed. The defendant had not left the courthouse, and the record does not suggest that the mittimus for the original sentence had even been drafted at the time of the resentencing. We also note that the trial court's original intent to impose an effective sentence of five years was unaffected by the resentencing, and that, in the final analysis, the defendant, who does not claim that either sentence was illegal, was left with the same amount of time to serve. In fact, the defendant objected only to the resentencing on the burglary conviction. The defendant's counsel, objecting to the court's resentencing, stated, "I object to that, your Honor. You can change the consecutive sentence to concurrent sentence, but I would object to resentencing on the burglary charge." It is somewhat inconsistent for the defendant to concede that the court could modify the misdemeanor sentences but not the felony sentence. Under these circumstances, for us to accept the defendant's interpretation that these proceedings were illegal would strain common sense and the law.

There is no error.

In this opinion the other judges concurred.