## STATE OF CONNECTICUT v. BARRINGTON WILLIAMS (5661)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 19—decision released September 6, 1988

---

*Mark A. Milano,* for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, was *Arthur Hadden,* assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant has appealed from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70.[1] He claims that the evidence presented by the state was insufficient to establish his guilt beyond a reasonable doubt and that the trial court erred by admitting statements he had made while being held in police custody without a showing that he had waived his right against self-incrimination voluntarily, knowingly and intelligently. We find no error.

The jury reasonably could have found the following facts. In the early morning hours of August 17, 1985, the victim, who is speech and hearing impaired, was walking toward a friend's home after attending a late night party in New Haven. During her walk, the defendant, a taxi driver, pulled up alongside and offered her a ride. After entering the taxi, the victim told the defendant that she wanted to go to her friend's house which she thought to be in East Haven. She gave him directions by pointing the way, and he drove her there. In reality, the friend's home was located in New Haven, and not East Haven. Finding no one awake or at home there, the victim asked the defendant to take her back to the party. The defendant instead drove randomly

---

[1] General Statutes § 53a-70 provides: "(a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

through various streets in the neighborhood, and, while driving, took the victim's hand, placed it on his penis, and indicated that he wanted her to have oral sex with him. The victim refused. Coming to a dead end street, the defendant stopped the cab and made unsuccessful efforts to remove the victim's pants. He then asked the victim to remove her own pants. She did so, fearing physical harm if she did not comply. Although the victim tried to push the defendant away, he sexually assaulted her in the taxi. After the assault, the defendant drove the victim to a gas station, gave her $5, and left.

The defendant was arrested following an investigation by the New Haven police, and was interrogated by the arresting officer, Detective Joseph Howard. Before questioning, the defendant was read his *Miranda* rights. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After he affirmed that he could read, the defendant was given the form card enumerating these rights, and was asked to place his initials on a line before each sentence when he had read and understood the right expressed therein. He then read and initialed each segment, and also signed the bottom of the form to indicate that he understood his constitutional rights, that he waived them, and that he would answer questions without an attorney present.

When questioned thereafter, the defendant admitted that he had taken a speech and hearing impaired woman as a passenger around the date of the rape, but denied having had sexual contact with her. When Howard suggested that it would be unwise for the defendant to lie because forensic tests had been performed on the taxi and evidence of sexual activity would likely be found if such activity had occurred, the defendant admitted that he had had sex that night, but claimed that it was not with the victim. When asked who this other person was, the defendant stopped talking and

refused to answer any further questions. The defendant did not request counsel at this time.

The following day, another police officer, Detective Mel Cartocetti, questioned the defendant for fifteen minutes after the defendant was again advised of his *Miranda* rights and had executed a *Miranda* form similar to the one he had read, initialed and signed before the first interrogation. The defendant admitted to the same information he had disclosed in the previous interview, but the questioning ceased when the defendant requested the assistance of counsel after he was asked to make his statements on a tape recording. After consulting with his attorney by telephone, the defendant was instructed to give no further statements and the interview ended.

## I

The defendant first challenges the jury's verdict because, he claims, the evidence presented at trial was insufficient to allow the jury to conclude that he was guilty beyond a reasonable doubt. Specifically, he argues that no substantive evidence was offered which established that he had used physical force to compel the victim to engage in sexual intercourse or that he threatened to use force which reasonably caused the victim to fear physical injury, as required by General Statutes § 53a-70. We disagree.

It is well established that when a jury verdict is challenged as being supported by insufficient evidence, the standard the defendant must meet to establish error is a rigorous one. " 'We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility.' " *State v. Monk,* 198 Conn. 430, 433, 503 A.2d 591 (1986), quot-

ing *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Robinson,* 14 Conn. App. 40, 42, 539 A.2d 606 (1988). The standard is whether the jury "could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). While the jury may not speculate to reach a conclusion of guilt, they may draw reasonable, logical inferences from the facts proven to reach a verdict. *State* v. *Robinson,* supra; *State* v. *Baskins,* 12 Conn. App. 313, 316, 530 A.2d 663 (1987).

Against this standard, the defendant's initial claim must fail. Establishing the issue of "use of force" is a question of fact reserved for the jury. *State* v. *Monk,* supra; *State* v. *Kish,* 186 Conn. 757, 766–67, 443 A.2d 1274 (1982); *State* v. *Robinson,* supra, 43. According to General Statutes § 53a-65 (7), "use of force," as relevant here, means "use of actual physical force or violence or superior physical strength against the victim." The defendant, citing *State* v. *Gionfriddo,* 154 Conn. 90, 96–97, 221 A.2d 851 (1966), argues that since he did not physically injure the victim and her clothing was not torn, such lack of evidence of the use of physical force "raises serious questions as to whether an offense had been committed." Based on the testimony presented at trial, it would not have been unreasonable for the jury to conclude that the defendant used "actual physical force" or "superior physical strength" in order to compel the victim to engage in sexual intercourse. Against her wishes, the defendant took the victim's hand and placed it on his penis; when she tried to pull her hand back, he held it there; when he got on top of her, she attempted to push him off, but "he wouldn't

get off." The jury heard this evidence and chose to believe it was true. Their determination based on this testimony was reasonable. It cannot be disturbed on appeal.[2]

Since we conclude that the evidence presented at trial was sufficient for the jury reasonably to have found that the defendant used actual physical force or superior physical strength to compel the victim to have sexual intercourse, it is unnecessary for us to decide whether the evidence was also sufficient to establish that the defendant threatened the use of force which reasonably caused the victim to fear physical injury.

## II

The defendant's final claim of error is that the prosecution did not sufficiently establish that he had voluntarily, knowingly, and intelligently waived his *Miranda* rights before he was questioned by the police detectives, and therefore his two oral statements were inadmissible. We do not agree.

The first argument the defendant advances to support his claim is that, as a native of Jamaica who had been living in the United States for only three years when he was arrested, he had a language problem with "American English" and had a "very heavy accent." He asserts that he did not understand his rights, and in fact testified that he assumed the *Miranda* forms

---

[2] The defendant, in his brief, claims that there was "no evidence of earnest resistance and no evidence that the defendant used force in any way to restrain the victim or otherwise compel sexual intercourse." We call attention to our decision in *State v. Mackor,* 11 Conn. App. 316, 321–22, 527 A.2d 710 (1987), in which we held that General Statutes § 53a-70, as revised by Public Acts 1975, No. 75-619, no longer requires that the state prove that physical force overcame earnest resistance. "[T]he state is now required to prove that it was the use of force or its threat which caused the victim to engage in sexual intercourse, and [General Statutes § 53a-70 (a)] does not by its express language require that resistance be proven." Id., 322.

concerned his bail, and not his privilege against self-incrimination.

A review of the transcript reveals that the state more than met its burden to establish by a preponderance of the evidence that the defendant waived his *Miranda* rights knowingly, intelligently, and voluntarily. *State v. Hernandez,* 204 Conn. 377, 395, 528 A.2d 794 (1987); *State v. Chung,* 202 Conn. 39, 48, 519 A.2d 1175 (1987). Cartocetti testified that the defendant appeared to have no problem understanding the written statements on the *Miranda* warning form. There is no evidence that the police pressured the defendant to waive his *Miranda* rights. Before questioning began, the defendant indicated that he was willing to waive his rights, initialed each segment of the *Miranda* forms, and signed them in the presence of the detectives. The *Miranda* forms contained no language regarding bail. Testimony by the detectives who questioned the defendant indicated that the defendant had no problem understanding and communicating with them. The defendant had attended high school in Jamaica, where English is the native language, before dropping out after the tenth grade. While it is true that a defendant must understand his rights in order to waive them knowingly, intelligently, and voluntarily; *State v. Hendrickson,* 12 Conn. App. 662, 666, 533 A.2d 894 (1987); *State v. Wilson,* 183 Conn. 280, 285, 439 A.2d 330 (1981); whether the defendant actually understood them is a question of fact for the jury to determine. *State v. Hendrickson,* supra, 666–67. We have carefully reviewed the evidence in the transcript and record and find that the jury had substantial evidence from which it could find that the defendant understood that he was waiving his right to remain silent. *State v. Hernandez,* supra, 395–96; *State v. Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); *State v. Hendrickson,* supra.

The defendant also argues that in his first interview the detective tricked him into admitting that he had had sexual intercourse in the taxi on the night he had taken the victim as a passenger by telling the defendant it would be unwise for him to lie, since the cab had undergone forensic tests and would likely produce evidence of sexual activity if the defendant had engaged in any that night. The defendant asserts that as a result of these questioning tactics, his waiver of his *Miranda* rights was not voluntary. This argument has no merit.

Although the interviewing detective was not aware of the results of the forensic tests, his interrogation did not involve the use of lies and did not rise to a level of proscribed conduct. The defendant's will was not overborne and his capacity for self-determination was not critically impaired by this statement of the detective. See *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961); *State* v. *Smith,* 200 Conn. 465, 478, 512 A.2d 189 (1986). The defendant's incriminating statements were "the product of [his] essentially free and unconstrained choice." *State* v. *Stankowski,* 184 Conn. 121, 132, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *Culombe* v. *Connecticut,* supra. The record contains substantial evidence that the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights. See *State* v. *Hernandez,* supra.

There is no error.

In this opinion the other judges concurred.