## In re Anonymous Nos. 86 D.B. 89 and 2 D.B. 90

Disciplinary Board Docket Nos. 86 D.B. 89 and 2 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

HILL, *Member,* June 30, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petitions for discipline.

## HISTORY OF PROCEEDINGS

Respondent, [    ], was born in 1947 and admitted to the practice of law in the Commonwealth of Pennsylvania in 1973. His office is located at [    ].

Office of Disciplinary Counsel filed two separate petitions for discipline against respondent as follows: No. 86 D.B. 89 ([A] matter), filed August 29, 1989, and No. 2 D.B. 90 (Charge I, [B] matter, and Charge II, [C]/[D] matter), filed January 8, 1990. In summary, Office of Disciplinary Counsel charged respondent with the following misconduct: Neglecting a legal matter entrusted; failing to seek the lawful objectives of his client; failing to carry out a contract of employment entered into with his client; failing to act with reasonable diligence and promptness in representing his client; failing to keep his client informed about the status of a matter; failing to explain a legal matter to the extent necessary to permit his client to make an informed decision; failing to promptly deliver to his client the property that his client is entitled to receive; and engaging in conduct involving misrepresentation. Respondent filed an answer to the two petitions for discipline on September 27, 1989, and February 7, 1990.

On February 12, 1990, the matters were consolidated for hearing and referred to Hearing Committee [    ] comprised of [    ]. A hearing was held on April 11, 1990. On August 8, 1990, the board granted the Hearing Committee's request for a 30-day extension in which to file its report. On September 10, 1990, the Hearing Committee filed its report, in which the committee recommended public censure. Neither petitioner nor respondent filed exceptions to the Hearing Committee report. Thereafter, the matter was adjudicated by the Disciplinary Board at its regularly scheduled meeting on November 2, 1990.

## FINDINGS OF FACT

The board adopts the following findings of fact as stipulated by counsel:

A. No. 86 D.B. 89, [A] Matter

On October 27, 1984, [A], the 7-year-old, minor son of [E] and [F], sustained injuries when he was struck by an automobile in [    ] County. In 1984, [E] and [F] retained [G], Esquire, to pursue all claims arising from the accident on behalf of their son. With the consent of [E and F], the case was turned over to respondent in 1985. Thereafter, on October 24, 1986, respondent initiated a timely action on behalf of his clients, by filing a praecipe and issuing a summons on the defendants, [H] and [I].

On March 18, 1987, [J], Esquire, entered his appearance on behalf of the defendants, along with a demand for a trial by jury. Attorney [J] also caused a rule to file a complaint to be issued on the plaintiff; the same being personally served on respondent in April of 1987. Thereafter, attorney [J] communicated with respondent on numerous occasions in regard to the filing of the complaint. By letters dated May 7, June 18, August 3, August 21 and August 27, 1987, attorney [J] continuously requested that respondent file a complaint. Having received no reply from respondent, on September 1, 1987, attorney [J] caused a judgment of non pros to be entered against the plaintiffs. Respondent failed to inform his clients of this judgment.

From October of 1986 until August of 1988, [F] telephoned respondent at least once a month. On each occasion, [F] inquired as to the status of the matter and requested that respondent return her call. Respondent failed to do so. In September of 1988 and on several occasions thereafter, [F] went to respondent's office in

an attempt to secure her file, but was unsuccessful. [F] then retained new counsel, [K], Esquire. By letters dated September 30, October 25, and November 23, 1988, attorney [K] advised respondent of her appointment as new counsel and requested the return of the [A] file. In addition, attorney [K] telephoned respondent's office on November 14 and December 1, 1988, in an attempt to secure the [A] file. By certified letter dated March 1, 1989, [F] specifically requested that respondent return her file. Neither attorney [K] nor [F] had received the file from respondent or any type of response.

B.   No. 2 D.B. 90, Charge I, [B] Matter

On September 1, 1988, respondent was retained to represent [B] in a no fault-divorce matter. As agreed, [B] paid respondent a fee in the amount of $175. On September 9, 1988, respondent filed a complaint in divorce on behalf of his client and had the complaint served on the defendant-husband. As requested by respondent, [B] delivered to respondent's office two affidavits of consent; one executed by her husband and another in which [B] affixed her own signature.

Thereafter, respondent failed to file an affidavit of service and failed to file the defendant's affidavit of consent within 30 days of its execution, in accordance with Pa.R.C.P. 1920.42(b)(2). Despite his inactivity, respondent assured [B] that her divorce matter was "moving along." By letter dated May 19, 1989, [B] requested that respondent provide her with the docket number of her divorce matter so that she may "go to the court house [h]erself." Respondent failed to reply. In June of 1989, [B] telephoned respondent and questioned him in regard to the status of her divorce. During this conversation, respondent advised [B] that the divorce would be settled within a few weeks. Respondent failed to advise [B] that new consent forms would have to be executed in

order to finalize the divorce. Thereafter, [B] telephoned the courthouse and discovered that respondent had failed to file the affidavits of consent and that the docket contained no record of the complaint having been served upon her husband.

By letter dated July 8, 1989, [B] instructed respondent to withdraw his appearance in her divorce action, forward her file to [L], Esquire, and return to her $100 of the fee. Respondent failed to reply. On July 20, 1989, respondent received a letter from the Office of Disciplinary Counsel which outlined the foregoing allegations. On approximately July 23, 1989, [B] received from respondent a check in the amount of $100. On July 27, 1989, attorney [L] received from respondent [B's] file.

C. No. 2 D.B. 90, Charge II, [C]/[D] Matter

[C] was an officer with the Pennsylvania State Police in the [ ] area, when, in the early 1980s, he became the subject of various federal and state criminal charges. [C] was convicted of felonies in two separate federal cases tried in [ ] and [ ], convicted of burglary in [ ] ([ ] County), and convicted of armed robbery in [ ] County in 1986. [M], Esquire, represented [C] during his trial in [ ] County. Following [C's] conviction in June of 1986, attorney [M] requested permission to withdraw as counsel, but the trial court ordered [M] to continue representing [C] throughout the appellate stage. At [C's] sentencing hearing on September 5, 1986, attorney [M] requested the trial court to reconsider his request to withdraw as counsel, which was denied. On that same day, [C] filed with the county clerk of courts a pro se notice of appeal from the judgment of sentence which had been prepared for him by attorney [M]. However, neither [C's] notice of appeal nor the entire record was lodged with the Superior Court. Attorney [M] then filed an appeal from the trial court's order requiring him to

proceed as appellate counsel. In an opinion, filed on November 13, 1987, the Superior Court vacated the lower court's order denying attorney [M's] request to withdraw as counsel, and remanded the case for appointment of new counsel for [C]. The Superior Court also noted in its opinion that, although the court had knowledge that [C] had filed a pro se notice of appeal, the court had no information concerning the status or disposition of the appeal. Thus, the Superior Court concluded its appellate consideration of the case and relinquished jurisdiction.

By order dated April 26, 1988, the Court of Common Pleas of [   ] County appointed respondent as [C's] appellate counsel. At all times pertinent to this matter during 1988-1989, [C] was confined in a federal prison in [   ]. Thereafter, [C's] sister, [D], sent respondent a letter dated May 9, 1988, in which she enclosed the following: Copies of [C's] recent correspondence with the Pennsylvania State Police in regard to retention of records by that agency; a copy of a federal rule in regard to the missing Pennsylvania State Police records and alleged tampering with and withholding of evidence by the state police; a copy of a brief, which is related to the issue of withholding evidence; and an explanation of [C's] alibi on the day of the robbery. By letter dated July 18, 1988, [C] advised respondent that he intended to have some input in his appeal, he did not want respondent filing an appeal based solely on the issues outlined by attorney [M], and that he expected respondent to obtain a complete transcript of the trial. [C] also advised respondent that his sister, [D], was familiar with the case, had [C's] power of attorney and could answer any questions that needed to be answered. By letter dated August 30, 1988, [C] inquired as to respondent's intentions in regard to filing the appeal and requested that respondent advise [D] of the same.

Due to the fact that respondent failed to communicate with either [C] or [D], [C] sent respondent a letter dated September 13, 1988, in which [C] advised respondent that he did not want respondent to file the appeal until respondent spoke to either [C] or [D]. [C] also advised that respondent must pursue the matter of the work records because the records are proof that [C] had an alibi on the day of the [    ] burglary. Again, respondent failed to respond.

On November 19, 1988, [D] traveled from her home in [    ] to meet with respondent at his office, located in [    ]. During this meeting, respondent informed [D] that he had failed to secure production of the entire trial transcript. Also, despite [C's] instructions, respondent outlined only four issues for appeal, which apparently were the identical issues attorney [M] had presented in post-trial motions. During their meeting, [D] informed respondent that she hired a private investigator. She also informed respondent of the following: The circumstances surrounding [C's] conviction in [    ] County; that the evidence against [C] was based on the testimony of two felons who testified in exchange for either immunity or leniency; pertinent work records which would support [C's] alibi could not be located; and that a certain Pennsylvania State Police sergeant committed perjury. [D] further advised respondent that although he may not find all these issues meritorious, she and [C] expected that he respond to them.

By letter dated November 27, 1988, [D] requested that respondent obtain a transcript of the trial and a copy of the Superior Court decision allowing attorney [M] to withdraw as appellate counsel. Further, [D] outlined all the issues she discovered with respondent which she and [C] expected respondent to address. By letter dated November 29, 1988, [D] forwarded to respondent a check

in the amount of $500 and materials in regard to [C's] [    ] County conviction. [D] requested that respondent give his opinion as to how to proceed to "overturn the conviction." By letter dated January 30, 1989, and February 1, 1989, [D] advised respondent that she would like to discuss [C's] post conviction petition; inquired whether respondent believed there was any merit in pursuing the issue of the Pennsylvania State Police work schedules; and informed respondent that [C] obtained the evidence he needed to show that he was working on the day of the [    ] burglary. Respondent failed to respond.

In March of 1989, during a telephone conversation, respondent informed [D] that he believed there was a "good chance of overturning the [    ] County conviction based upon a claim of ineffective assistance of counsel." Thereupon, [D] suggested that respondent request that the [    ] County Court appoint him counsel. When respondent stated that he would not be interested in such an appointment due to inadequate compensation, [D] indicated that she might be able to raise some money for his services. At the end of this conversation, respondent promised to send to [D] a copy of the draft of the post-conviction relief petition in regard to the [    ] County conviction.

During March of 1989, [D] advised respondent that [C] was scheduled to appear in [    ] before a grand jury. However, respondent failed to communicate with [C] prior to or immediately after this occasion. During March and April, [D] repeatedly requested that respondent forward to her the transcripts and other materials pertaining to the [    ] County case. She also requested a copy of the draft of the post-conviction relief petition respondent had promised to send. Respondent failed to forward any materials. Respondent also failed to respond to [C's]

letter dated May 3, 1989, in which [C] conveyed various information relating to the [      ] County trial.

In May of 1989, [C's] son went to respondent's office to pick up the [      ] County transcripts and materials. However, in addition to these materials, respondent included the entire four-volume set of [      ] County transcripts, which respondent had previously received in February. By letter dated June 5, 1989, [C] advised respondent that he included the [      ] County transcripts and inquired as to what respondent wanted [C] to do with them. In his letter, [C] also expressed his dissatisfaction with respondent's lack of communication. On May 26 and 31, 1989, [D] telephoned respondent's office and left messages for respondent to send her a copy of the draft of the post-conviction relief petition. Respondent failed to return [D's] telephone call or reply to [C's] letter.

On June 29, 1989, respondent received from [D] a letter mailed through the Federal Express Overnight Service in which [D] informed respondent that it was her understanding that respondent had filed the post-conviction petition. She enclosed a self-addressed, prepaid Federal Express envelope and requested that respondent forward to her a copy of the petition. Respondent failed to do so. When [D] questioned respondent on Wednesday, July 5, 1989, respondent assured her that he would "call the courier immediately" and she would receive the petition in the [      ] County case the following day. On July 10, 1989, [D] learned from the [      ] County Court authorities that respondent did not file a post-conviction relief petition. She immediately telephoned respondent's office and left a message that she verified that no petition was filed. [D] also demanded an explanation and requested the return of the $500 she previously paid respondent.

Since the time respondent was appointed appellate counsel on April 26, 1988, respondent took no action to pursue the appeal of [C's] [    ] County conviction. On July 21, 1989, President Judge [N] of [    ] County sent respondent a letter noting that the [C] transcript had been forwarded to respondent on February 27, 1989, and requested an update of the status of the appeal. During telephone conversations on August 3 and 4, 1989, respondent agreed to meet with Judge [N] on August 7, 1989, which was the last day Judge [N] would be available before leaving on a three-week vacation. Without explanation, respondent failed to appear for the scheduled meeting.

On September 20, 1989, Judge [N] issued a status memorandum and order in which the court stated that at the time respondent was appointed appellate counsel in the [C] matter, the court was proceeding on the basis of a misconception that the pro se notice of appeal had been perfected and the entire record had been transcribed. The court further acknowledged that respondent was also proceeding under this mistaken assumption. Further, the court realized that the [C] appeal had not been perfected. The court then directed the clerk of courts to forward [C's] pro se notice of appeal to the Superior Court, directed [C] to provide written information as to his current financial status, and directed respondent to advise the court in writing within 30 days of the issuance of the order as to whether he will continue as court-appointed counsel for [C].

It was not until October 27, 1989, that respondent advised the court by letter that the attorney-client relationship had degenerated to the point where he could "no longer continue with the representation." By order dated October 31, 1989, the court accepted respondent's letter of with-

drawal as counsel and appointed the [  ] County public defender as [C's] appellate counsel.

## CONCLUSIONS OF LAW

Respondent has been found guilty of violating the following Disciplinary Rules:

A.  No. 86 D.B. 89, [A] Matter

(a)  D.R. 1-102(A)(4), RPC 8.4(c)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(b)  D.R. 6-101(A)(3)—A lawyer shall not neglect a legal matter entrusted;

(c)  D.R. 7-101(A)(1)—A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonable available means;

(d)  D.R. 7-101(A)(2)—A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

(e)  RPC 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(f)  RPC 1.15(b)—A lawyer shall promptly deliver to the client property that the client is entitled to receive; and

(g)  RPC 1.16(d)—A lawyer shall surrender papers and property to which the client is entitled upon termination of representation.

B.  No. 2 D.B. 90, Charge I, [B] Matter

(a)  RPC 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client;

(b)  RPC 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information; and

(c) RPC 8.4(c)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

C. No. 2 D.B. 90, Charge II, [C]/[D] Matter

(a) RPC 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client;

(b) RPC 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(c) RPC 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation; and

(d) RPC 8.4(c)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## DISCUSSION

In his answers to the petitions for discipline, respondent admitted violating certain disciplinary rules. Also, the parties have entered into an extensive stipulation of facts which support a determination that respondent's conduct constitutes a violation of the Disciplinary Rules of both the Code of Professional Responsibility and Rules of Professional Conduct. Thus, the sole issue before the board is the determination of the appropriate discipline. The Hearing Committee recommended public censure. Neither petitioner nor respondent filed exceptions to the Hearing Committee report.

All three matters, [A], [B] and [C]/[D] will be discussed together, since in each matter respondent engaged in a similar pattern of misconduct which included neglect, misrepresentation and a failure to communicate with his clients. Respondent's neglect of all three matters was not simply an instance of inadvertent forgetfulness. Respondent's neglect involved indifference and a consistent failure to carry out his obligations toward his clients. Re-

spondent's neglect of his clients' matters is demonstrative of the type misconduct D.R. 6-101(A)(3) and RPC 1.3 were implemented to protect against. See *In re Anonymous No. 24 D.B. 80,* 20 D.&C.3d 214, 225 (1982).

In the [A] matter, respondent failed to timely file a complaint on behalf of his clients, despite the fact opposing counsel afforded respondent every opportunity to do so. Respondent's neglect of this matter resulted in a judgment of non pros being entered against his clients. Respondent failed to inform his clients of this judgment. In addition, respondent failed to respond to any communications from his clients. Finally, after his clients retained new counsel, respondent failed to return the file.

In the [B] divorce matter, respondent failed to file an affidavit of service and failed to file the defendants' affidavit of consent to the divorce within 30 days of its execution in accordance with Pa.R.C.P. 1920.42(b)(2). Respondent failed to advise his client that new consent forms would have to be executed in order to finalize the divorce. Despite his inactivity, respondent assured [B] that her divorce matter was "moving along" and that the matter would be settled within a few weeks. It was only after Office of Disciplinary Counsel sent respondent a letter of allegations that respondent returned to [B] the $100 fee and returned her file to subsequent counsel.

In the [C]/[D] matter, the Court of Common Pleas of [   ] County appointed respondent as [C's] appellate counsel. From the time of his appointment until October 31, 1989, the date the court accepted respondent's letter of withdrawal, respondent took no action to pursue an appeal of [C's] [   ] County conviction. In addition, respondent failed to respond to the numerous letters and telephone calls from both [C] and his sister, [D]. Due to respondent's lack of communication, [D] found it necessary to travel from her home in [   ] to meet with

respondent at his office in [ ]. During this meeting, [D] outlined 11 issues which her brother wanted respondent to address in the appeal. Also, [D] sent respondent a $500 check with the request that respondent advise her how to proceed with an appeal of [C's] [ ] County conviction. Respondent advised [D] that he believed there was a "good chance of overturning the conviction based upon a claim of ineffective assistance of counsel." He also advised her that he had already drafted a post-conviction petition and would send her a copy. Thereafter, respondent was not responsive to either [C's] or [D's] inquiries as to the status of the appeal. [D] never received a copy of the supposed petition and the petition was never filed with the court.

In each of these matters, respondent has neglected his clients' interests and attempted to conceal his neglect by misrepresenting the status of the case. Respondent has also consistently failed to adequately communicate with his clients. In addition, the record indicates that respondent has been disciplined on two prior occasions for similar misconduct. Pursuant to section 89.151(b)(9) of the Disciplinary Board Rules, any previous discipline administered to respondent is admissible in order to determine the appropriate discipline in the pending matter. On March of 1987, respondent was administered an informal admonition and in 1988, respondent received a private reprimand. Respondent's prior disciplinary record indicates recidivistic conduct, which the board views as an aggravating circumstance in this case. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981).

Counsel for respondent argues that respondent's past misconduct which gave rise to the previous discipline, was the result of his admitted alcoholism and therefore was not voluntary and thus, should not be considered

in the recommendation of discipline in the pending matter. The board disagrees with respondent's argument. Alcoholism and other mental illness may not be asserted as a complete defense to discipline violations and may not be utilized to eradicate past disciplinary records. Alcoholism and other mental illnesses may be considered in mitigation when determining the appropriate discipline. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 533 A.2d 894 (1989). The key inquiry is whether respondent's alcoholism was a factor in causing his misconduct. *Id.* In the present matter, respondent testified that he had problems with alcohol prior to 1987. In August of 1987, respondent underwent alcohol treatment at [ ] Hospital and participated in out-patient care for 12 weeks. Respondent also completed an Alcoholics Anonymous program and regularly attends Alcoholics Anonymous meetings. As of August of 1987, respondent stopped drinking. However, respondent's misconduct in the instant matters occurred from 1984 to 1989; two years beyond the time respondent admits he was free from alcohol. The board finds that respondent has failed to present compelling evidence showing that his alcoholism was the cause of either his previous misconduct or his misconduct at issue in the present matter. The board agrees with the Hearing Committee's determination that respondent's alcohol problem will not be considered as a mitigating factor in the instant matter nor will it be utilized to negate the aggravating circumstances of his previous discipline.

In determining the appropriate discipline, the board has considered the testimony of respondent's two witnesses, [O], Esquire, and [P], Esquire, both of whom testified to respondent's excellent trial abilities and excellent reputation as a trial attorney. In addition to their testimony, both attorney [O] and attorney [P] volunteered

to act as monitors. Attorney [P] indicated that he would monitor respondent's office practice, specifically respondent's case intake, progress on cases, and compliance with the applicable statutes of limitations. In addition, attorney [P] will meet with the judges of the Court of Common Pleas in [    ] County to identify any problems that may arise and will meet with respondent's staff to monitor complaints. Attorney [O] indicated that he would serve as respondent's sobriety monitor. In light of respondent's prior alcohol addiction and ongoing battle against alcoholism, the board believes that appointing attorneys [O] and [P] as monitors will adequately serve both the respondent and the public.

## RECOMMENDATION

The board believes that only public discipline will impress the respondent with the seriousness of his dilatory and negligent conduct. However, we do not believe that a suspension is warranted in this case. As indicated above, the board does not accept respondent's assertion that his misconduct was caused by his alcohol problem. We are concerned that respondent feels that despite his abstinence, his previous drinking somehow caused the misconduct. The board concludes in this case that it would be wise to assist the respondent in maintaining abstinence and regular attendance at Alcoholics Anonymous meetings.

The board recommends that respondent, [    ], be publicly censured by your honorable court. In addition, the board recommends that respondent be placed on probation for a period of one year, subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall maintain weekly telephone contact with his Alcoholics Anonymous sponsor, whose name, address and telephone number shall be provided to the secretary by the respondent;

(4) [O], Esquire, is hereby appointed respondent's sobriety monitor, pursuant to Disciplinary Board Rule 89.293(c) and respondent shall cooperate fully with [O];

(5) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board approved form to [O];

(6) As sobriety monitor, [O] shall:

(a) monitor the compliance by respondent with the terms and conditions of the order imposing probation;

(b) assist the respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with the respondent, at least twice a month, and maintain weekly telephone contact with the respondent;

(d) maintain direct contact with the Alcoholics Anonymous sponsor of the respondent on a monthly basis;

(e) file quarterly-written reports with the secretary of the board; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

(7) [P], Esquire, is hereby appointed as respondent's practice monitor. [P] will meet with respondent on a monthly basis to review respondent's workload, verify deadlines and regular client contact, and review his trust account;

(8) [P] shall file quarterly-written reports on a board approved form to the secretary.

The board recommends further, that respondent be ordered to pay the expenses of investigating and prosecuting this matter, pursuant to Rule 208(g), Pa.R.D.E.

Mr. Friedman abstained.

Messrs. Tumolo and Gilardi did not participate in the adjudication.

## ORDER

And now, June 30, 1992, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated June 28, 1991, are approved and it is ordered, that [respondent] be publicly censured and that the respondent be placed on probation for a period of one year subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall maintain weekly telephone contact with his Alcoholics Anonymous sponsor, whose name, address and telephone number shall be provided to the secretary by the respondent.

(4) [O], Esquire, is hereby appointed respondent's sobriety monitor, pursuant to Disciplinary Board Rule 89.293(c) and respondent shall cooperate fully with [O];

(5) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board approved form to [O];

(6) As sobriety monitor, [O] shall:

(a) monitor the compliance by the respondent with the terms and conditions of the order imposing probation;

(b) assist the respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with the respondent at least twice a month, and maintain weekly telephone contact with the respondent;

(d) maintain direct contact with the Alcoholics Anonymous sponsor of the respondent on a monthly basis;

(e) file quarterly written reports with the secretary of the board; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

(7) [P], Esquire, is hereby appointed as respondent's practice monitor. [P] will meet with respondent on a monthly basis to review respondent's workload, verify deadlines and regular client contact, and review his trust account;

(8) [P] shall file quarterly written reports on a board approved form to the secretary.

It is further ordered that the respondent be ordered to pay the expenses of investigating and prosecuting this matter pursuant to Rule 208(g), Pa.R.D.E.