# STATE OF CONNECTICUT *v.* MALEEK JONES
## (AC 16447)

Foti, Landau and Heiman, Js.

Argued May 29—officially released September 9, 1997

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HEIMAN, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-54a[2] and 53a-8,[3] conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[4] and 53a-54a (a),[5] and carrying a pistol without a permit in violation of General Statutes § 29-35.[6] On appeal, the defendant asserts that the trial court improperly (1) excluded a confession allegedly made by a participant in the crime to a third party, thereby denying the defendant his constitutional right to present a defense, (2) allowed the state to offer

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] See footnote 2.

[6] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

misconduct evidence that was more prejudicial than probative concerning the defendant's drug dealing activities and a violent dispute with his girlfriend's former boyfriend, (3) refused to give a missing witness charge to which the defendant was entitled, and (4) failed to make proper inquiry into a midtrial claim by the defendant that he was denied proper investigation and preparation of his case because of his indigency, thereby denying him his due process rights to effective assistance of counsel and a fair trial, and his right to equal protection of the law. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant, Maleek Jones, was a member of a group of about eight persons who sold narcotics in the Edgewood Avenue area of New Haven. The group was known by the name Red Line because of the color of the bags they used to sell narcotics. The group used a second floor apartment on the corner of Chapel and Beers Streets as its base of operation. The apartment was located a short distance from Saint Raphael's Hospital.

The defendant was involved in a relationship with Teeba Henderson, who had previously had a long-term relationship with Steven Gary. Gary did not take the break up of their relationship well and continued to pursue Henderson. The defendant and Gary had argued and, subsequently, in April, 1992, had a fight in which Gary was knocked unconscious.

There was animosity between the Red Line group and individuals friendly with Gary who lived in the area of Carmel Street. The animosity between the two groups had escalated to the point that members of the Red Line group had gone to Gary's neighborhood, and the groups exchanged gunfire.

On October 14, 1992, at approximately 1:30 a.m., the victim, Eddie Harp, a friend of Gary, was driving his station wagon in the vicinity of Saint Raphael's Hospital. The victim pulled the vehicle into the emergency room parking lot and parked in an area reserved for security vehicles. Louis Yanac, a security officer, approached the victim, who informed Yanac that he was visiting Sheila McCray, a hospital employee, during her lunch break. Yanac observed McCray and the victim conversing in the waiting area of the emergency room. Yanac left the area to make rounds and, when he returned to the emergency room area, he noted that the victim, McCray and the victim's station wagon were gone. The victim returned to the hospital and dropped off McCray at the main entrance. At about 2:10 a.m., as the victim left the hospital driveway, shots were fired, and the vehicle rolled into a parking lot across from the hospital's main entrance.

When the police arrived at the scene, they found the victim's car running with the victim unconscious in the driver's seat. The victim was transported by ambulance to the hospital, where it was found that he had suffered three gunshot wounds, one of which had penetrated his brain, resulting in his death about six hours after the shooting.

Several hours before the murder, the defendant was in the apartment at the corner of Chapel and Beers Streets with Tyrone Spears, Gene John, who was known as Pepper, and two individuals from New York. The defendant and Pepper left the apartment and returned about two hours later. The defendant was excited and said that "the kid from Carmel Street is outside." He and Pepper immediately ran outside armed with .357 revolvers. Spears obtained a .357 revolver that was concealed in the ceiling of a closet in the common hallway of the building and joined the defendant and Pepper outside.

As Spears exited the apartment building, Pepper and the defendant were near the driveway leading to the main entrance of the hospital. When the victim's vehicle pulled out of the driveway, the defendant, Pepper and Spears began shooting at the vehicle. The defendant and Pepper were about nine feet from the driver's side of the vehicle when they opened fire. They continued to fire at the vehicle as the car rolled slowly into the parking lot opposite the main entrance. After the shooting, the three individuals ran back to the Red Line apartment.

I

The defendant asserts that the trial court improperly excluded "Lee Bember's testimony of a third party confession that he shot the victim, thereby denying the defendant his constitutional right to present a defense, and this exclusion also constituted evidentiary error and an abuse of discretion under the circumstances of this case." At oral argument, the defendant conceded that he had not raised with the trial court a claim that the statement was admissible under the residual or catch-all exception to the hearsay rule, and he abandoned that claim. We must resolve the constitutional claim and the claim that the statement was admissible as a third party declaration against penal interest. We find neither claim meritorious.

Certain additional facts and procedural history are necessary to our resolution of this issue. The defendant sought to offer the testimony of Bember, claiming that his testimony would raise a claim of a declaration against penal interest by reason of a statement Pepper allegedly made to Bember. In the absence of the jury, Bember testified that after the shooting, he and Pepper were "at a pay phone at Orchard and Edgewood Avenues. Two girls approached me, two girls I never seen before and told me 'Oh, you Red Line mother fuckers

killed my brother' and boom, Pepper's like let's leave, let's leave, let's go get strapped, meaning, let's go get our guns, which we did, when we got in my house [Pepper] told me, 'Yo, um, last night me and Ty caught a body,' meaning that we killed this dude last night." He further testified, in the absence of the jury, that that conversation took place the day after the shooting and that, in his conversation with Pepper, the defendant's name was not mentioned.

The state called as a witness Thomas Trocchio, a New Haven police officer, who testified in the absence of the jury that he had talked with Bember at approximately 9 p.m. on October 14, 1992, about nineteen hours after the shooting. He testified that Bember told him that he and Pepper were approached by two black females, one of whom he knew as Monique, and the other whom he knew as Theresa Garrett. Trocchio also testified that Bember told him that Garrett had said that Spears had shot the victim. Trocchio also stated that Bember told him that when he and Pepper returned to Bember's home, Pepper told Bember that Spears was responsible for the shooting death of the victim. Trocchio said that Bember told him that Pepper had told him, "Your boy Ty [Spears] shot that dude last night." The officer also asserted that Bember did not tell him that Pepper had implicated himself as having been a participant in the murder. After hearing the offers of proof as to the admissibility of the statement allegedly made by Pepper to Bember, the trial court excluded the testimony because it found that the evidence was not trustworthy.

The defendant first asserts that the trial court's exclusion of the evidence of the statement allegedly made by Pepper to Bember implicates the defendant's due process right to present a complete defense. We are not persuaded that the defendant's constitutional rights

were compromised in any way by the exclusion of this evidence.

We first note, as we have in a number of other opinions, that "[r]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature." (Internal quotation marks omitted.) *State* v. *Hansen*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). Moreover, our Supreme Court has clearly stated that the right to present a defense does not include the right to offer evidence that is incompetent, irrelevant or otherwise inadmissible. See *State* v. *Boles*, 223 Conn. 535, 550, 613 A.2d 770 (1992). "Every evidentiary ruling that denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error. [Here] the defendant has put a constitutional tag on a nonconstitutional claim." *State* v. *Vitale*, 197 Conn. 396, 403, 497 A.2d 956 (1985). "Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). "[I]n the exercise of his sixth amendment right to compulsory process the accused, as required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (Internal quotation marks omitted.) *State* v. *Stange*, 212 Conn. 612, 625, 563 A.2d 681 (1989).

"The right to present a defense is not . . . absolute. Rather, the Supreme Court has never questioned the power of the states to exclude evidence that is repetitive . . . only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues. *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679, [106 S. Ct. 1431, 89 L. Ed. 2d 674] (1986). *Crane* v. *Kentucky*, [476 U.S. 683, 689–90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)].

Whether a trial court's erroneous restriction of a defendant's or defense witness's testimony in a criminal trial deprives a defendant of his due process right to present a defense is a question that must be resolved on a case by case basis. *State* v. *Jones*, 205 Conn. 723, 731, 535 A.2d 808 (1988)." (Internal quotation marks omitted.) *State* v. *Fernandez*, 27 Conn. App. 73, 78–79, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992). On the basis of our review of the record, we conclude that the trial court did not deprive the defendant of his due process right to present a defense by excluding evidence that it had determined to be untrustworthy.

We turn next to the defendant's parallel claim that the trial court improperly excluded an alleged third party declaration against penal interest, when such statement was admissible as an exception to the hearsay rule. See *State* v. *Bryant*, 202 Conn. 676, 692–93, 523 A.2d 451 (1987). We are unpersuaded.

Here, the trial court concluded that the proffered testimony was not trustworthy, and on that basis excluded the evidence. The trial court is vested with discretion to make the determination of whether a third party declaration against penal interest is trustworthy. See *State* v. *Sanchez*, 200 Conn. 721, 725, 513 A.2d 653 (1986). In determining whether such declarations against penal interest are trustworthy, our Supreme Court has set down four criteria to be taken into account by the trial court, no single factor of which is conclusive. See id., 724–25. The four factors to be taken into account by the trial court have been stated as follows: "(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness." (Internal quotation marks omitted.) Id. An examination of the transcripts reveals that there was

no dispute that at the time of the trial Pepper, the alleged declarant, was dead. Thus, we need focus only on whether, in assessing the three remaining criteria, the trial court abused its discretion in determining that the statement was not trustworthy.

The evidence before the trial court reveals that, about nineteen hours after the victim's murder, Bember told Trocchio in an interview that Pepper had told him that Spears had shot "that dude [Harp] last night." Trocchio testified that at no time did Bember tell him that Pepper had implicated himself in the murder. In his testimony before the trial court, Bember testified that Pepper had admitted that he had been involved with Spears in the victim's murder. Thus, on the basis of the testimony before it, the trial court had substantial evidence that the original statement given by Bember to the police as to what Pepper had told him did not rise to the level of a statement against Pepper's penal interests. Further, nothing in the record would support a finding that Bember and Pepper enjoyed a close and confidential relationship or that Bember was a person in whom Pepper would naturally confide. See *State* v. *Rivera*, 221 Conn. 58, 70, 602 A.2d 571 (1992).

Finally, the record is devoid of corroboration that Pepper actually implicated himself to Bember. "The corroboration requirement for the admission of a third party statement against penal interest is significant and goes beyond minimal corroboration. Third party statements exculpating an accused are suspect and the requirement of corroboration, to effectuate its purpose of circumventing fabrication, must be construed as requiring corroborating circumstances that clearly indicate the trustworthiness of the proffered statement." *State* v. *Rosado*, 218 Conn. 239, 249, 588 A.2d 1066 (1991). Here, rather than corroboration of the alleged confession by Pepper, there is a direct contradiction by Trocchio, reporting that Bember had told him that Pepper had implicated only Spears.

Moreover, an examination of the record indicates that the testimony of Bember would have been cumulative, even if admitted. Ernestine Bember was permitted to testify before the jury that sometime between Thanksgiving and Christmas, 1992, Pepper had told her that he and Spears had set out to rob the victim. In the course of the robbery, Spears panicked because he thought that the victim was reaching for a gun and, in reaction to Spears' warning, Pepper fired.

Moreover, Lee Bember also proposed to testify that Pepper never mentioned the defendant's name while talking about the victim's murder. We note that even if he did not mention the defendant's name or involvement in the murder of the victim in his conversation with Lee Bember, this is not exculpatory of the defendant.

Because we conclude that the trial court acted correctly in excluding the proffered evidence, we do not reach the issue raised by the defendant as to whether existing law should be revisited as to the burden of proof to establish harmlessness in the face of a nonconstitutional evidentiary error. Even if we were to reach that issue, we are bound by the decisional law of our Supreme Court; see *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 195, 676 A.2d 831 (1996); *State* v. *Napoleon*, 12 Conn. App. 274, 282, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987); that places the burden on the defendant to establish harmfulness of an improper evidentiary ruling nonconstitutional in nature. See *State* v. *Cavell*, 235 Conn. 711, 721–22, 670 A.2d 261 (1996).

Considering all of the circumstances of this case, we conclude that the trial court did not abuse its discretion in determining that the alleged statement sought to be introduced as a statement against penal interest was not trustworthy, and that neither the defendant's right to present a defense nor his right to expose admissible

evidence were abridged by the trial court's proper action.

## II

The defendant next asserts that the trial court improperly permitted the state, over his objection, to elicit testimony concerning his prior acts of misconduct that was more prejudicial than probative. Specifically, the defendant claims that the state should not have been permitted to offer evidence as to the defendant's drug dealing and prior misconduct toward Gary and his friends. We are unpersuaded.

Certain additional facts are necessary to an understanding of our resolution of this claim. During the course of the trial, the state offered Spears as a witness. Spears testified, over the defendant's objection, that he and the defendant were engaged in the sale of cocaine in the Edgewood Avenue section of New Haven as members of the eight person Red Line group, and that the defendant was above him in the chain of command. Spears also testified that the group used an apartment near Saint Raphael's Hospital for their narcotics dealings. In addition, Spears testified that the group stored weapons in the ceiling of a closet in a common area of the building so that the weapons would not be found if the police raided the apartment.

The trial court, after overruling an objection, immediately gave the jury a limiting instruction concerning the use of the evidence.[7] The defendant's girlfriend, Henderson, testified that before she became involved

---

[7] The trial court instructed the jury as follows: "You're here today for the trial of this case to determine whether or not [the defendant] committed either or any of the charges or offenses that are outlined in the information. You're not here to judge him whether or not he was involved in anything else on any other occasion than October 14, 1992. He's here on trial for a charge of murder, conspiracy to commit murder, and carrying a pistol without a permit, and any other evidence to illegal operations has no bearing on your determination of the charges as outlined in the information."

with the defendant she had had a long term relationship with Gary, a friend of the victim. She further testified that Gary continued to pursue her while she was involved with the defendant and that the two men had argued and fought, with the defendant once knocking out Gary. The state, in an offer of proof in the absence of the jury, claimed that this evidence was admissible to show motive.

The state subsequently offered the testimony of Spears, who testified that there was animosity between the members of the Red Line group and persons from the Carmel Street area because of the former relationship between Henderson and Gary. He further testified that members of both groups entered each others' neighborhoods and shot at each other.

Spears also testified that on the night of the victim's murder, the defendant was excited and stated that "the kid from Carmel Street is outside." At that point, Spears, Pepper and the defendant, all armed with guns, ran outside and fired at the victim as he attempted to exit the hospital parking lot.

The law in Connecticut regarding the admission of evidence of prior misconduct is well established. "As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule. . . . The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency." (Citations omitted; internal quotation marks omitted.) *State* v. *Falby*, 187

Conn. 6, 23, 444 A.2d 213 (1982). " 'Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done.' " *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987). Thus, we afford every reasonable presumption in favor of the ruling of the trial court. See id.

We first examine the evidence relating to the drug dealing activities of the defendant with Spears and Pepper. We note that the defendant was charged, in addition to other charges, with the crime of conspiracy to commit murder, and it was incumbent on the state to establish a connection between the defendant and his alleged coconspirators. The three were more than mere acquaintances and were engaged together in illegal activities.

We have consistently permitted the introduction of evidence of acts of prior misconduct in order to establish a relationship between alleged coconspirators where one of the charges against the defendant is a conspiracy charge. See, e.g., *State* v. *Jones*, 44 Conn. App. 338, 345–46, 689 A.2d 517, cert. denied, 240 Conn. 929, 693 A.2d 301 (1997) (evidence of drug dealing permitted to show relationship among alleged coconspirators where defendant charged with conspiracy to commit murder); *State* v. *Harris*, 43 Conn. App. 830, 836–37, 687 A.2d 544 (1996) (evidence of existence of drug operation permitted to show relationship among various individuals where charge is conspiracy to commit murder); see also *State* v. *Brown*, 199 Conn. 47, 54–58, 505 A.2d 1225 (1986) (evidence of uncharged misconduct of defendant relevant to show nature of relationship with another party involved with defendant in commission of robbery).

Moreover, at the time that the evidence concerning the defendant's involvement in the sale of drugs was

admitted into evidence, the trial court immediately gave a limiting instruction,[8] thereby reducing any prejudicial impact of the prior misconduct evidence. See *State* v. *Brown*, supra, 199 Conn. 58.

Making every reasonable presumption in favor of the trial court's ruling, we cannot conclude, under the circumstances of this case, that the trial court abused its discretion by admitting the challenged evidence of the defendant's involvement in drug trafficking with Spears and Pepper.

We next turn our attention to the defendant's assertion that evidence of the animosity between the defendant and Gary was inadmissible.[9] Specifically, the defendant asserts that the trial court improperly admitted evidence that the defendant had knocked out Gary because the prejudicial impact of such evidence outweighed its probative value. We disagree.

We have previously set forth the standard by which we review claims of this nature. Here, the evidence

---

[8] See footnote 7.

[9] Our review of the record discloses that the defendant did not raise a specific prior misconduct objection to any part of Spears' testimony as to the animosity between the two groups other than his objection to the testimony that the defendant had knocked out Gary. The defendant made no specific objection on prior misconduct grounds to the testimony of Spears concerning the shooting at residents of the Carmel Street area by the defendant and other members of the Red Line group. "Appellate review of evidentiary rulings is limited to the specific legal ground raised by the objection of counsel at trial. . . . A specific objection is necessary to alert the trial court to purported error while there is time to correct it without ordering a retrial and to permit the opposing party to argue against the objection at trial." (Citations omitted.) *State* v. *Goodrum*, 39 Conn. App. 526, 543, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995). We, therefore, decline to review that portion of the claim now raised for the first time on appeal. We also note that, even if we were to afford review of that portion of the claim that raises for the first time on appeal the shooting incidents between the defendant and members of the Red Line group and the residents of the Carmel Street area, it would not avail the defendant. Evidence of that nature clearly was admissible as establishing motive. See *State* v. *Falby*, supra, 187 Conn. 23.

objected to provided a link in the chain of evidence showing the existence and degree of animosity between the rival groups. Thus, the evidence could be used by the jury as evidence of motive on the part of the defendant. Evidence of motive is one of the exceptions to the rule that excludes evidence of prior acts of misconduct. See *State* v. *Falby,* supra, 187 Conn. 23.

Making every reasonable presumption in favor of the trial court's ruling, we cannot conclude, under the circumstances of this case, that the trial court abused its discretion in allowing into evidence the contested testimony.

## III

The defendant next asserts that the trial court improperly refused to give the jury an adverse inference charge regarding two missing witnesses; see *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960); where the state failed to call as witnesses both McCray and James Bailey. We are unpersuaded.

Certain additional facts are necessary to an understanding of our resolution of this issue. Testimony was introduced that showed that prior to his murder, the victim had been in the company of McCray at the hospital during her lunch break. The state did not call McCray as a witness and the defendant requested a missing witness charge. The defendant did not offer any evidence to establish that McCray was available at the time of trial. Rather, he offered evidence to show only that at the time of the murder McCray was employed at the hospital. The murder occurred on October 14, 1992, and the trial took place in March, 1995.

Bailey had been interviewed by the police concerning his observations at the scene of the murder and gave two statements implicating both the defendant and Spears as having been involved in shooting at the victim.

The police used Bailey's statements in obtaining arrest warrants. Bailey told the police that the defendant and Spears fired four or five shots each from semiautomatic handguns at the victim's station wagon. Outside the presence of the jury, the state conceded that Bailey was incarcerated at the Carl Robinson Correctional Institution and was available as a witness. Nothing was presented to the jury regarding Bailey's availability.

The defendant filed a proper request with the trial court seeking a charge to the jury as to McCray and Bailey as missing witnesses pursuant to *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 672. The trial court did not charge as requested and the defendant duly excepted.

"The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against the party who would be expected to call that witness. . . . An inquiry into the appropriateness of a *Secondino* instruction is, accordingly, two-pronged: whether the witness is available and whether, under the facts of this case, the witness is one whom the state would naturally be expected to produce." (Citations omitted; internal quotation marks omitted.) *State* v. *Wood*, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675–76.

"To take advantage of this rule permitting an adverse inference, the party claiming the benefit must show that he is entitled to it." (Internal quotation marks omitted.)

*State* v. *Rosa*, 170 Conn. 417, 431, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976). "That is, the party claiming the benefit of the ruling must show that the witness is available and that the witness is one whom the party would naturally produce." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 771, 443 A.2d 1274 (1982).

As the party to be benefited by the negative inference, the burden rested on the defendant to establish that the state was able to procure the presence of McCray in court. See *State* v. *Wood*, supra, 208 Conn. 140. The defendant failed to offer any evidence to establish that McCray was available as a witness at the time of trial. The fact that McCray had been employed at Saint Raphael's Hospital at the time of the murder, more than two years before trial, does not constitute evidence of availability as a witness at the time of trial. The defendant, therefore, was not entitled to a missing witness instruction as to McCray. See id.

We turn next to our resolution of the defendant's claim concerning Bailey. The state first argues that the defendant was not entitled to a missing witness charge because it failed to place before the jury evidence that Bailey was available as a witness. The state posits that even the state's concession that Bailey was incarcerated at a Connecticut correctional facility was insufficient because it is for the jury to determine whether the witness was available and no evidence was before the jury as to Bailey's whereabouts. Second, the state asserts that the defendant failed to demonstrate that Bailey was a witness whom the state would naturally produce. Because we agree with the state that the defendant failed to establish that Bailey was a witness whom the state would naturally produce, we do not address the claim respecting his availability.

"There is significant authority for the well settled proposition that the government is not required to call

every witness who might be able to give some evidence about the crime." (Internal quotation marks omitted.) *State* v. *Kish*, supra, 186 Conn. 772. Thus, it was the defendant's burden, as the party seeking the benefit of the adverse inference, to establish that Bailey was a witness who would naturally be produced by the state. See *State* v. *Adams*, 14 Conn. App. 119, 128–29, 539 A.2d 1022 (1988).

As we have previously observed, a witness who would naturally be produced is one known to the party, and who, because of the relationship of the witness with the party or the issues, or both, reasonably could be expected to have peculiar or superior information or knowledge material to the case, that, if it were favorable to that party, the party would produce. See *State* v. *Williams*, 20 Conn. App. 263, 266, 565 A.2d 1365 (1989). On the other hand, it is also abundantly clear that "[a] prospective witness whose testimony would be comparatively unimportant, cumulative or inferior to what has been offered, should be dispensed with on the grounds of expense and inconvenience, without the need for an adverse inference charge." Id.

Here, the state presented the testimony of Spears, a coconspirator, who was an active participant in the murder, and who testified that the defendant was one of three persons who acted together to cause the death of the victim. Additionally, there was physical evidence linking the defendant to the commission of the crimes charged. Moreover, there was evidence of a possible motive for the crimes, as well as evidence to establish that the perpetrators were engaged together in criminal activities that established that they were more than strangers to one another or simply casual acquaintances. In short, the evidence produced, without Bailey's testimony, established the existence of each of the elements of the crimes charged. See *State* v. *Adams*,

supra, 14 Conn. App. 129.[10] Given that Spears' testimony
was by a participant in the crime, the testimony by
Bailey placing the defendant at the scene of the murder
as an active participant would have been inferior to
and merely cumulative of the testimony of Spears.

We also note that, at the time of trial, the state con-
ceded that Bailey was incarcerated at a correctional
facility. It is unlikely that the state would naturally pro-
duce as a witness an incarcerated felon when other
evidence of a similar nature is available. See *State* v.
*Stevenson,* 43 Conn. App. 680, 696, 686 A.2d 500, cert.
denied, 240 Conn. 920, 692 A.2d 817 (1996).

"Whether an absent witness has superior or peculiar
information and whether an adverse inference can be
drawn is a question of fact for the trier. . . . This court
cannot reverse or modify the trial court's determina-
tion[s] of fact unless they are clearly erroneous." (Cita-
tion omitted; internal quotation marks omitted.) *State*
v. *Owen,* 40 Conn. App. 132, 138, 669 A.2d 606, cert.
denied, 236 Conn. 912, 673 A.2d 114, cert. denied, 237
Conn. 922, 676 A.2d 1376 (1996).

After a careful consideration of the record, we con-
clude that the trial court acted properly in declining to
afford the defendant a missing witness charge concern-
ing both McCray and Bailey.

## IV

Finally, the defendant asserts that the trial court
acted improperly when it failed to inquire into a claim
made by the defendant during trial that he had been
"denied adequate investigation and preparation of [his]

---

[10] In *State* v. *Adams,* supra, 14 Conn. App. 127–29, the missing witness
was claimed to be an eyewitness to the crime. We held in that case that
the witnesses that were produced at trial were sufficient to establish each
element of the offenses charged and that given the testimony produced at
trial, the defendant had failed to establish why the witness was one that
the state would naturally produce. Id., 129.

case as a result of his indigence, thereby denying the defendant his due process rights to effective representation, assistance of counsel, and a fair opportunity to defend against the state's accusations, and his right to equal protection of the laws." Because this claim raises an ineffective assistance of counsel claim, the proper forum in which to raise this issue is by habeas corpus.

Certain additional facts are necessary for an understanding of our determination that this matter must be resolved by habeas corpus. The defendant was represented at his arraignment by a public defender, and, subsequently, a special public defender was appointed who represented the defendant from November 17, 1992, until the trial ended. Near the end of the defendant's case, after he had called a number of witnesses to support his claim of alibi and third party culpability and after counsel had advised the court that he and the defendant were discussing whether the defendant would testify in his own behalf, the defendant, through counsel, asked permission to address the court. The trial court permitted the defendant to address the court. The defendant explained to the court that because of his indigency, he had been denied proper investigation and preparation of his case, and thus his right to a fair trial had been violated.[11]

---

[11] The following occurred when the defendant was permitted to address the trial court:

"The Defendant: The first thing I wanted to say was about the ballistics test. I just got those papers in March of 1995. I never seen the ballistics findings about—

"The Court: What's this?

"The Defendant: The ballistic findings—

"The Court: See, I don't know anything about any of the evidence in this case, Mr. Jones.

"The Defendant: Well, I'm saying that my lawyer said that he filed for a motion for discovery in December, 1992. I never got a ballistics test that was taken in October until just now, March of 1995. Now, the police, they used this guy saying he seen us commit a crime or whatever, and he was the person that they got probable cause to get an arrest warrant, or whatever, and now they not using him in the trial, and I don't feel like that's right,

We have long held that the proper forum in which to address claims of ineffective representation of counsel is in the habeas forum or in a petition for a new trial, rather than on direct appeal. See *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). We have also consistently recognized that the constitutional right to adequate assistance of counsel subsumes a competent pretrial investigation. See *State* v. *Clark*, 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). We conclude, thus, that the defendant's claim is one of ineffective assistance of counsel since it raises an issue of the

you know. And then he's saying that we have to call him as a witness. He was a state witness, not a defense witness. Also, this girl, Sheila McCray, was supposed to have been with the victim at the time that this crime took place and she saying she seen exactly what happened and the state didn't call her neither. I don't feel like that's fair.

"The Court: Well, Mr. Jones, you've been represented by counsel here, competent counsel, and we've been going through this trial. And if you have any problems with what has been produced or what hasn't been produced, you're going to have time to reflect on that, and consider it. And then you can take any appropriate action that suits your purpose. But we're not going to get into that now.

"The Defendant: So that's going to be after my case is heard to the jury, or whatever.

"[Defendant's Counsel]: May I consult with my client?

"The Court: Sure."

Consultation with client.

"The Defendant: Also, I was suppose to be represented by a private investigator who, you know, in the course of my trial, he stopped representing me because he's saying that my family couldn't pay him now. From my understanding, I didn't feel like we were supposed to have to pay him because I have a special public defender. You know what I'm saying. That's saying that I couldn't pay for a lawyer. Now, this man stopped representing me a year and a half ago, and I had made—I had wrote my lawyer many letters asking him could he get ballistics findings and stuff like that. For me now, I went through this whole course of the trial without nobody investigating my case. You know. So, I feel like I'm not being—you know what I'm saying. I'm not having a fair trial here. I don't feel that that's right. That I had to go through my whole trial without nobody investigating or nothing. You know. That's all I wanted to say.

"The Court: All right."

competency of the pretrial investigation. In accordance with our prior precedent, we further conclude that this issue must first be resolved in a habeas corpus proceeding. See *State* v. *Hamilton,* 228 Conn. 234, 245, 636 A.2d 760 (1994); see also *State* v. *Pardo,* 199 Conn. 354, 358, 507 A.2d 461 (1986); *State* v. *Leecan,* supra, 541–42.

As our Supreme Court has stated, an ineffective assistance claim "should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." *State* v. *Leecan,* supra, 198 Conn. 542.

The judgment is affirmed.

In this opinion the other judges concurred.