## STATE OF CONNECTICUT *v.* LESTER MCHOLLAND (AC 21326)

Foti, Dranginis and West, Js.

Argued May 3—officially released July 16, 2002

*Jeffrey G. LaPierre*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Gail P. Hardy*, assistant state's attorney, for the appellee (state).

### Opinion

WEST, J. The defendant, Lester McHolland, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On appeal, the defendant claims that the trial court violated his constitutional right to confrontation and to provide a defense by limiting his use of the victim's psychological records, which the court concluded were protected by the rape shield statute.[1] We affirm the judgment of the trial court.

---

[1] General Statutes § 54-86f is commonly known as the rape shield statute. Section 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) *otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights.* Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied,

The jury reasonably could have found the following facts. In July, 1999, the victim was twenty-one years old and the defendant was thirty-eight. About one week before the incident that gave rise to the defendant's conviction, a mutual friend had introduced the victim to the defendant. The victim and the defendant lived in close proximity to one another in Waterbury.

On the morning of July 7, 1999, while the defendant was performing repairs to his motor vehicle in front of the friend's home, the victim walked by and stopped to have a conversation with him. The victim asked the defendant whether he would like to go to the movies. He responded that he had to repair his vehicle and that he needed to go to the junkyard for parts. He asked the victim if she needed transportation and then drove her to her apartment.

The defendant parked his vehicle outside the apartment while the two continued to talk and then began to tickle and kiss one another. They soon entered the victim's apartment and engaged in consensual penile-vaginal intercourse. In the midst of intercourse, the victim told the defendant that she expected her counselor to arrive with the medicine she took for manic depression. They stopped their sexual activity, showered and awaited the counselor's arrival. After the medicine was delivered and ingested by the victim, the defendant drove the victim to a social club for the mentally impaired.

At approximately 9 o'clock that evening, the victim saw the defendant working on his vehicle outside the home of his cousin with whom he resided. The victim again asked the defendant to go to the movies with her and he consented. While they were returning from the

except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense." (Emphasis added.)

movies at about 11:30 p.m., the two discussed sex. They agreed that the defendant would come back to the victim's apartment after he returned his cousin's vehicle.

The defendant immediately went back to the victim's apartment and knocked on her window as she had instructed him to do. She then let him enter by the common front door. The victim had changed into a nightgown and prepared herself something to eat. The defendant rubbed the victim's feet and back, and the two again engaged in consensual vaginal intercourse. During their sexual encounter, defendant inserted his penis into the victim's rectum. The victim screamed, told the defendant that she did not like anal intercourse and asked him to stop several times. When the defendant withdrew, the victim was furious and crying. She ordered the defendant to leave, which he did.

At approximately 1 a.m. on July 8, 1999, the victim telephoned the friend, told her that the defendant had raped her and asked the friend to come to her apartment. The victim also telephoned her neighbor. The neighbor could not understand the victim because she was hysterical. The neighbor went to the victim's apartment, and the victim told her that the defendant had raped her. The victim was so angry that she broke three windows in her apartment. As the friend was driving to the victim's apartment, she saw the defendant walking home. The defendant told the friend that he had inserted his penis in the victim's rectum and that she started to scream. The defendant asked the friend to take him to the victim's apartment so that he could apologize. When the victim saw the defendant, she began to scream. The defendant returned to his home.

When the police arrived, the victim told Officer Richard Baxter of the Waterbury police department that the defendant had raped her and had put his penis in her anus. Baxter then called for other officers to pick up

the defendant for questioning. The police found the defendant at his home and took him to the scene. Baxter read the defendant his *Miranda* rights.[2] The defendant waived his rights and agreed to speak with Baxter. He told Baxter that he and the victim had engaged in consensual sexual relations earlier in the day. The defendant told Baxter that after going to the movies with the victim, he had been rubbing the victim's back and that when he inserted his penis in her anus, she began to scream. Baxter asked the defendant whether he stopped when the victim asked him to do so. The defendant replied that he did not stop right away. The defendant was taken to the police station where he gave a written statement in which he admitted that he had restrained the victim despite her requests that he cease anal intercourse.[3] He was charged with sexual assault in the first degree pursuant to § 53a-70 (a) (1).[4]

Following his conviction, the defendant appealed to this court, claiming that the trial court had denied him his constitutional rights to present a defense and to confront the victim by refusing to let him use the victim's psychiatric records to impeach her on cross-examination. To be more specific, the defendant claims that the court should have let him cross-examine the victim with respect to her mental health records concerning hallucinations and delusions, as they related to her response to anal intercourse. The state argues that we should not review the defendant's claim because it was

---

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] The defendant's statement was put into evidence. The defendant stated in relevant part that he and the victim had "started making love again, and then I stuck my dick in her ass and she freaked out. She started yelling at me that she didn't like that. She told me to stop. I didn't stop right away . . . ."

[4] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

not preserved at trial. The state contends that at trial, the defendant sought to cross-examine the victim about flashbacks and posttraumatic stress disorder as they related to her reaction to anal intercourse with the defendant. The state correctly notes that on appeal, the defendant has focused on hallucinations and delusions, not flashbacks.

The following procedural facts are pertinent. The victim has a history of mental illness and has been hospitalized for psychiatric treatment a number of times. The defendant sought access to her records. Following an in camera review, the court, *Damiani, J.*, disclosed some of the victim's records to the defendant as they might relate to the victim's credibility. Prior to trial, the state filed a motion in limine seeking, pursuant to General Statutes § 54-86f, to prevent the defendant from offering evidence of the victim's sexual conduct other than conduct forming the basis of the instant charge unless the defendant had filed a prior motion to admit such evidence and the court had determined, following a hearing and offer of proof, that the evidence comported with § 54-86f, was admissible and had probative value that outweighed its prejudice to the victim.

The court, *Doherty, J.*, heard arguments from the parties on April 10, 2000. The state argued that the defendant should not be permitted to inquire about the victim's prior sexual history, including prior sexual assaults, unless he satisfied one of the requirements of § 54-86f. Defense counsel responded, "There is one particular incident that the defense would like to inquire about, and that is a 1988 sexual assault, in which she was the victim of, I believe, a neighbor. She also has been diagnosed with posttraumatic stress disorder and also in the records for psychiatric [treatment], which were disclosed to the defense. She had had flashbacks in the past. My understanding is that the incident in 1988 was an anal rape much similar to the incident that

happened on July 8th [1999]. My client's contention is that they were having consensual sex and she consented to [anal intercourse]. And that when he started, she did a flip, basically freaked out, was his term, and that it ended right there. He does give a long description of an incident, which I believe the evidence may show, if given the opportunity to expand upon, [which caused the victim to have] a flashback due to a previous incident, given her psychiatric condition and history."[5]

In response to the defendant's argument, the court reserved judgment on the state's motion in limine. The court indicated, however, that if the defendant's voluntary statement to the police was put into evidence, the court would grant the motion in limine because the defendant had admitted in his statement that he had restrained the victim and continued anal intercourse after the victim asked him to stop. The court also concluded that evidence of the 1988 sexual assault on the victim was more prejudicial than it was probative of the victim's consent.

We review the following colloquy to determine whether the defendant's claim with respect to § 54-86f and hallucinations was preserved at trial. On cross-examination, defense counsel questioned the victim as follows:

"Q: [H]ave you heard voices in the past?

[5] Defense counsel also argued: "[T]here is a defense because it does go to her competence to, basically, her credibility as far as her ability to relate the incident as it happened on that night, specifically if there are indications that she had this disorder and has had that experience in the past and has had flashbacks in the past also. And it basically shuts down an area of defense which I think is critical to the witness' credibility and also critical to what happened that night, irrespective of the statement my client gave, because, obviously, he's going to have to testify and explain certain things of that away. However, shutting this down now precludes the defense that he would be able to raise and also a defense that I think is relevant and probative and does outweigh the prejudice to the victim."

"A: I don't remember.

"Q: You don't remember? Were you ever treated or [been] hospitalized for hearing voices?

"A: Not that I recall.

"Q: Who is Jay?"

The state objected to the question about Jay, a name mentioned in the psychiatric records that the court had disclosed to counsel. The court sustained the objection. The court indicated, however, that it would permit defense counsel to further inquire about whether the victim had visual or auditory hallucinations.

Defense counsel continued his cross-examination of the victim:

"Q: [Y]esterday, I asked you if you had in the past any hallucinations. Have you had [auditory] and have you also had visual hallucinations?

"A: Not that I remember.

"Q: Have you ever been treated in the hospital for visual hallucinations?

"A: No, I haven't.

"Q: Have you ever been diagnosed with posttraumatic stress disorder?"

The state objected to the question concerning post-traumatic stress disorder as it related to the prior sexual assault. The court sustained the objection.

After both sides had rested, the defendant filed a motion to open the evidence to introduce some of the victim's redacted psychiatric and hospital records.[6] The

---

[6] In support of the motion to open, defense counsel answered, in relevant part, in response to the court's request for an offer of proof: "Yes, Your Honor. It is my intention basically, a question I did ask previously to her, the question that I intend to ask today is that, '[Do you] ever remember being treated or reporting auditory and, or, visual hallucinations?' And I believe her answer to one or both of those previous occasions was, 'I don't recall,' or, 'I don't remember.' And I believe in one instance she even said,

court granted the defendant's motion. The defendant recalled the victim to lay the necessary evidentiary foundation for having two of the victim's redacted hospital records admitted into evidence.[7] The following colloquy occurred:

"Q: I believe I asked you once before, but I will ask you again today. At any time, do you recall being hospitalized or treated or reporting that you saw or heard hallucinations?

"A: No, I don't.

"Q: At this time, I would like to show you some documents, starting with this one. I would like you to take a look at that and see if that refreshes your recollection. Does that refresh your recollection?

\* \* \*

"Q: Okay. So, it does not. How about this document? Does that refresh your recollection?

"A: Put it this way. I don't remember at all having any auditory hallucinations."

On the basis of our review of the entire transcript and consideration of the parties' briefs and oral arguments, we conclude that the defendant did not preserve

---

'No.' I think that was it, but I think the question was, 'Do you recall?' I think her answer is fairly consistent with 'I don't recall.' . . . Obviously, if her answer today is 'yes,' I do recall having been treated, or I recall [having] been treated for that, I would be precluded from going any further. But if her answers are to remain consistent with what she said last time, I would then offer—there are two documents, which I have redacted, which the court has found under our rules of evidence to be business records. So, I would offer those as full exhibits."

[7] The following portions of two of the victim's redacted psychiatric records were entered into evidence: "[A]uditory hallucinations," "[t]he patient reports auditory hallucinations but says at the same time that she can ignore them right now"; "reports that she had auditory hallucinations," "heard voices real loud," and "[t]he patient clarifies that she first started hearing the voices approximately in 1993 and that they 'come and go at different times.' "

his claim of constitutional deprivation with respect to the victim's hallucinations and delusions. At trial, when objecting to the state's motion in limine and attempting to cross-examine the victim with respect to flashbacks, the defendant claimed that the rape shield statute, § 54-86f, deprived him of his constitutional rights. He did not make that constitutional argument with respect to the issue of hallucinations and delusions. The alleged constitutional issue as stated by the defendant in his brief therefore has not been preserved for appellate review. The issue that the defendant has briefed and argued is an evidentiary one.

Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review. See *State* v. *Jones*, 46 Conn. App. 640, 646, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997).[8] Although this court will review an unpreserved constitutional claim if it satisfies the criteria of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[9] unpreserved evidentiary claims are not afforded the same protection.

Ordinarily, where a claim is not reviewable, we do not reach the question. Here, however, we will review the defendant's evidentiary claim because all of the

[8] "We first note, as we have in a number of other opinions, that [r]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Moreover, our Supreme Court has clearly stated that the right to present a defense does not include the right to offer evidence that is incompetent, irrelevant or otherwise inadmissible. . . . Every evidentiary ruling that denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error. [Here] the defendant has put a constitutional tag on a nonconstitutional claim. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, supra, 46 Conn. App. 646.

[9] Although the defendant framed his appellate claim in constitutional terms, he did not seek *Golding* review.

relevant facts were before us as we reviewed the procedural issue concerning preservation. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. . . . In other words, [o]nce an objection has been made and the grounds stated, a party is normally limited on appeal to raising the same objection on the same basis as stated at trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Trotter*, 69 Conn. App. 1, 10–11, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002). Our standard of review of a trial court's evidentiary rulings is one of abuse of discretion. See *State* v. *Sanchez*, 69 Conn. App. 576, 583, 795 A.2d 597 (2002). We will disturb the court's evidentiary rulings only upon a showing that the ruling resulted in "substantial prejudice or injustice to the defendant." (Internal quotation marks omitted.) Id., quoting *State* v. *Jackson*, 257 Conn. 198, 213, 777 A.2d 591 (2001).

In this case, the court permitted the defendant to cross-examine the victim as to her history of auditory and visual hallucinations three times and opened the evidence to permit the defendant to put two of the victim's redacted hospital records into evidence. Those records were before the jury and demonstrated that despite her denial, the victim indeed has a psychiatric history of auditory hallucinations. Furthermore, because we have reviewed the victim's medical records in camera, we conclude that the defendant suffered no prejudice as a result of the court's ruling, as the victim's hallucinations were not of a sexual nature.

The judgment is affirmed.

In this opinion the other judges concurred.